THE STATE, ex rel. GOODIN, v. A. THOMAN, Auditor, &c.

1. DISTRICT JUDGES; Term of Office. The constitution of the state fixes the term of office of the judges of the district court at four years, and it is not in the power of the legislature to increase or extend that term either directly or indirectly.

2. GENERAL ELECTIONS; Constitutional and Statutory provisions. The constitution requires that a general election be held on the Tuesday next succeeding the first Monday in November in each year. The general election-law provides all the requisite machinery for conducting elections and ascertaining the results. It follows, that where the term of an office

| 10 | 191 |
| 52 | 157 |
| 10 | 191 |
| d55 | 302 |
| J55 | 306 |
| 10 | 191 |
| 63 | 510 |
| 63 | 513 |
| 10 | 191 |
| 64 | 861 |
| 64 | 866 |
| 10 | 191 |
| 67 | 356 |

is fixed by the constitution, and its commencement is once prescribed by law, the omission to provide expressly by statute for an election to fill such office for a second or subsequent term will not render void an election held for such purpose at the last "regular election" before the expiration of the constitutional term; but in such case the constitution is self-executing, and of its own force orders such election.

3. ——— *Election of District Judges.* Where the first judge of a new judicial district was legally elected at the general election in 1867, the election of judge in such district at the general election of 1871 was held at the proper time, and entitles the party elected to a full term of four years from the second Monday of January 1872, and such judge is entitled to a salary of $2,000 per annum during such term.

4. ——— *Constitution; Purpose; Paramount Law.* The manifest purpose of the constitutional provision is to secure not merely a fixed term of office to judges, but also to the people at stated intervals the opportunity of changing the incumbents. The constitution is the paramount law. As between the will of the people expressed in the constitution, and that expressed in the statute, the former always prevails.

*Original Proceedings in Mandamus.*

On the 23d of April 1872, *Hon. John R. Goodin,* judge of the seventh judicial district, filed in this court his petition for a writ of *mandamus* against *Hon. A. Thoman,* auditor of state. The petition alleged that the relator was elected judge of said seventh district at the general election held in November 1867 for the term of four years from the second Monday of January 1868; that he had served as such judge during said term; that he was re-elected to said office at the general election held in November 1871 for the term of four years from the second Monday of January 1872, and had qualified as such judge; under said second election, and was performing the duties of his said office; that by the law in force at the time of the first of said elections the salary of district judges was fixed at $1,500 per year; that by §5, ch. 91, Gen. Stat. of 1868, which act was in force at the second of said elections, the salary of district judges was fixed at $2,000 per year; that he, the relator, had presented to the defendant, as auditor, his claim for $500 for one quarter-year's salary, to which he was entitled, from the second Monday of January 1872, but that defendant refused to audit the same at the sum of $500,

but audited said claim at the sum of $375, and refused to audit said claim and account for any greater sum than $375, etc.; "that said auditor sets forth as the reason and the only reason for refusing to audit said claim at its full face of '$500 the fact that the legislature of the said state, at its session for the year 1872, appropriated only the sum of $1,500 to pay the salary of the relator for the year 1872," etc., and prayed that a writ of mandamus be issued commanding said auditor to audit and allow the said claim of the relator at $500, and future claims at the same rate until said $1,500 should be exhausted, etc. An alternative writ was issued, to which *Thoman*, as auditor, demurred. The case was heard on said demurrer.* No briefs on file.

*Solon O. Thacher*, for the relator.

*A. L. Williams*, attorney-general, for the state.

The opinion of the court was delivered by

BREWER, J.: This is an original proceeding in mandamus brought in this court by the relator to compel the defendant as auditor of the state to issue to him scrip on the basis of a salary of two thousand dollars per annum. The appropriation made by the last legislature was fifteen hundred dollars, and upon the basis of that appropriation the auditor is acting. The relator claims that under the laws regulating judicial salaries he is entitled to two thousand dollars, and insists that he should be paid at that rate, until at least the appropriation is exhausted. Upon the facts as alleged there is no dispute,

[ * THAT the legislature of 1872 were of the opinion that express authority was necessary to constitute a valid election, is shown by the enactment of the following statute, which was passed and approved February 29th, 1872, (Laws of 1872, page 259.) Said act does not appear to have been discussed or considered in the disposition of this case; and from the view of the constitution taken by the court said act is inoperative and void. — REPORTER.]

CHAP. 117.—AN ACT to provide for the election of judges of the Sixth, Seventh, Eighth and Ninth judicial districts of the State of Kansas.

*Be it enacted by the Legislature of the State of Kansas:*

SECTION 1. At the general election of 1872, and every four years thereafter, there shall be elected in the sixth, seventh, eighth and ninth judicial districts of the State of Kansas, judges of the same, who shall hold their offices for four years from the second Monday of January 1873, and until their successors shall be elected and qualified.

and the only question presented for our determination is one of law, and that is, the amount of salary which under the statutes the relator is entitled to receive. By the legislation of 1867 four additional judicial districts were created, and the governor was authorized to appoint judges who should hold their offices until their successors were elected and qualified. Sec. 15, of ch. 52, laws 1867, p. 89, reads:

"SEC. 15. There shall be elected at the next general election, judges of the district court for the sixth, seventh, eighth and ninth judicial districts; such elections to be conducted in all respects in accordance with existing laws, and such judges to have and exercise all the powers and perform all the duties which are now or may be imposed by law *for* [upon] judges of the district courts of this state, and who shall hold their offices for the term of four years and until their successors are elected and qualified."

At the general election in 1867 the relator was elected judge of the seventh district, and re-elected at the general 1. District judg- election of 1871. The salary of district judges es; term of office. at the time of his election in 1867 was fifteen hundred dollars. In 1868, it was raised to two thousand dollars, and so remained until 1872, when it was again raised to twenty-five hundred dollars. Art. 3, § 13, of the constitution provides that "The justice of the supreme court and judges of the district court shall at stated times receive for their services such compensation as may be provided by law, which shall not be increased during their respective terms of office," etc. Upon these facts alone, there would appear little question that the relator was entitled to two thousand dollars. As against these facts is this: There was no statute authorizing an election for district judges in 1871. Hence it is claimed that the attempted election was invalid, and conferred no title, and that the relator is still serving out the term to which he was elected in 1867, and entitled to only fifteen hundred dollars. Sec. 5, of art. 3, of the constitution provides that in each judicial district "there shall be elected, by the electors thereof, a district judge who shall hold his

office for the term of four years." Sections 3 and 5 of the
election law, ch. 36, Gen. Stat., p. 428, reads:

"SEC. 3. On the Tuesday succeeding the first Monday in
November 1868, and on the Tuesday succeeding the first
Monday in November in every fourth year thereafter, there
shall be held a general election for the election in each judi-
cial district of one judge of the district court," etc.

"SEC. 5. The provisions of this act shall not apply when
there are special provisions in any other statute fixing the
time for the election of any of the officers above named."

The only special statutory provision in any way pointing to
an election at another time is §15 of ch. 52 of laws 1867,
heretofore quoted. Was the election in 1871 a valid election?
On the one hand it is claimed that the constitutional term of

2. General elec-
tions ; consti-
tutional and
statutory pro-
visions.

office is four years; that the constitutional pro-
vision is restricting, and prevents the legislature
from increasing that term either directly or indi-
rectly, and that it is self-executing, and authorizes an election
at the expiration of four years, whether there be any legisla-
tion therefor or not. On the other hand it is insisted, that
the constitution is not self-executing, and that some legisla-
tion authorizing an election, prescribing place and manner,
and establishing rules and regulations, must be had before
any valid election can be held. It is unnecessary for us to
inquire how far the absence of all legislation would affect an
attempted election, for the legislature has by the election law
of 1868 (ch. 36, Gen. Stat., p. 403–428,) established all
necessary rules and regulations, and provided all requisite
machinery for conducting elections, ascertaining their results,
and contesting the same. The constitution, art. 4, § 2, fixes
the time for general elections on the Tuesday succeeding the
first Monday in November of each year, so that time and
place, manner and machinery, are all provided. Indeed, the
only thing wanting, if anything be wanting, to make valid
this election is express statutory authority therefor. The
term of office is, as we have seen, four years. This being a
constitutional provision is beyond legislative change. It is a
fixed quantity: *Comm'rs of Leavenworth v. The State, ex rel.*

*Latta,* 5 Kas., 688.   The relator's term of office to which he was elected in 1867 commenced on the second Monday of January 1868, and terminated on the second Monday of January 1872.   The constitution does not fix the day of the year for the commencement of a judicial term, but the statute does: Gen. Stat., 418, ch. 36, § 58; and where the constitution is silent, we conceive the legislature has the power: *People v. Weller,* 11 Cal., 87; *State v. Mebling,* 6 Ohio St., 43. Besides, the allegation is, that relator's term commenced in January 1868, so that even if the legislature were powerless, and the term commenced with the qualification of the party elected, the pleadings have placed the commencement in January 1868, and the constitution places the end in January 1872.   Since that time the relator holds his office either by virtue of the election of 1871, or by virtue of § 12, art. 3, of the constitution, which declares that "all judicial officers shall hold their offices until their successors shall have been qualified."   If this latter view be correct, the surplus time over the four years, during which he has been holding office, is no part of the term to which he was elected.   He either fills an interregnum, as it were, is a sort of temporary supply, or else is occupying a portion of some other person's term.   As the constitutional restriction on increase of salary is operative only during the term, we might stop here, for the relator's term expired in January 1872, and from that time on, under either view, he would be entitled to $2,000 per annum.   But inasmuch as an election might be held this fall (1872) if the question were left open as to the validity of that held in 1871, and unpleasant controversies arise, we deem it not inappropriate to consider the validity of that election, and place our decision of the case upon that ground.   And the result of that consideration has been favorable to the validity of such election. To hold otherwise would give to the legislature power to continue any officer (save one of its own members) in office for an indefinite period.   For the constitutional provision extends to all state, judicial, county, and township officers,

3. Judges for the sixth, seventh, eighth, and ninth districts, for full term, to be elected in 1871, 1875, 1879, etc.

giving them possession of their respective offices until their successors are qualified. At the expiration of a term there arises no vacancy which can be filled by appointment. An election must be had, or the then incumbent continues: *Borton v. Buck*, 8 Kas., 302. A simple omission of the legislature to act might thus give to an incumbent a life-lease of his office. While the possible abuse of a power is no ground for questioning its existence, (for power must be lodged somewhere, and there is always possibility of its abuse,) yet where grave doubts exist as to the meaning and effect of a certain constitutional provision, the balance may sometimes properly be turned by a consideration of results. The constitution is the paramount law. It is above leg-

4. Art. 3, §§ 5 and 12 of the constitution. Object and purpose.

islatures, and courts. It was intended as a paramount rule, to be changed only by the people in their sovereign capacity. By it they have expressed their purpose, a purpose not to be thwarted by their representatives. As between the will of the people expressed in the constitution, and that expressed in the statute, the former always prevails. As between two constructions of the former, that which gives stability and force is preferred to that which makes it simply an expression of desire, subject to the omissions or caprices of each succeeding legislature. The manifest purpose of the constitutional provisions is to secure not merely a fixed term of office to judges, but also to the people at stated intervals the opportunity of changing the incumbents. Now, if the constitutional term has no force till re-enacted in the statute, the latter would seem the paramount authority; and all constructions which make the former dependent on the latter tend to belittle the permanent law. The constitutional provision is, that in each district "there shall be elected by the electors thereof, a district judge, who shall hold his office for the term of four years." This does not apply to the first district judges alone, but establishes a permanent rule. It would seem a fair implication that such election should be held at the last general election prior to the commencement of such term. That

would be consonant with the general rule governing all elections everywhere, and a constitution, as well as the statutes, must be construed in the light of settled and general usage. Of course, where it speaks its words declare its meaning; but it is impossible, in the general terms in which it is couched, to provide expressly for all possible contingencies. It must be so construed as to give force to and uphold its several provisions; and in so construing it, it not unfrequently happens that something must be implied to give force to that which is expressed. It says the people shall elect the judges; that the term of office of district judges shall be four years; that general elections shall be held on the Tuesday succeeding the first Monday in November. Is it not a fair implication that it authorizes an election at the general election last prior to the commencement of each term? Implied authority similar to this is spoken of approvingly in the cases of *The State, ex rel. Crawford, v. Robinson*, 1 Kas., 26, and *The State, ex rel. Watson, v. Cobb*, 2 Kas., 54. We are aware of the difficulties attendant upon this construction, and that in some respects it savors of judicial legislation, something which all courts should be careful to avoid. But in no other way can we uphold the various provisions of the constitution, and carry into effect the will of the people clearly expressed therein. Our conclusion therefore is, that the election of 1871 for district judge was valid; that in January 1872 the relator entered upon a full term of four years, and is entitled to compensation at the rate of $2,000 per annum. The peremptory writ will therefore issue as prayed for.

KINGMAN, C. J., concurring.