No. 49,880

DEE CLARK and JANE CLARK, *Appellants,* v. CITY OF OVERLAND PARK, KANSAS, *Appellee.*

(602 P.2d 1292)

Opinion filed December 1, 1979.

*Frank D. Covell,* of Couch, Covell, Katz, Dickerson & Strausbaugh, of Mission, argued the cause, and *Richard B. Katz,* of the same firm, was with him on the brief for the appellant.

*John R. Martin,* assistant attorney general, argued the cause, and *Phillip L. Harris,* city attorney, and *Helen Mountford,* assistant city attorney, were with him on the brief for the appellee.

*Frank A. Bien,* of Topeka, was on the brief for the League of Kansas Municipalities, *amicus curiae.*

The opinion of the court was delivered by

MILLER, J.: An Overland Park ordinance, imposing a city sales tax, is challenged in this declaratory judgment and injunction action. The trial court upheld the ordinance, denied an injunction, and dismissed the action. The plaintiffs, resident taxpayers of Overland Park, appeal.

The constitutional and statutory background of the dispute before us is somewhat complicated. We will set forth chronologically the various enactments.

On July 1, 1961, the "Home Rule Amendment," article 12, § 5 of the Kansas Constitution became effective. Those portions of the amendment germane to this case are as follows:

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all

cities of the same class: *Provided,* That the legislature may establish not to exceed four classes of cities for the purpose of imposing all such limitations or prohibitions. Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, to enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness. All enactments relating to cities now in effect or hereafter enacted and as later amended and until repealed shall govern cities except as cities shall exempt themselves by charter ordinances as herein provided for in subsection (*c*).

"(*c*)(1) Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city.

. . . .

"(*d*) Powers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government."

Also on July 1, 1961, K.S.A. 12-137 and 12-138 (Corrick) became effective. These sections provided in substance that any city proposing to levy any tax could pass an ordinance by a two-thirds vote of a governing body; publication for two consecutive weeks in the official city newspaper was required. The ordinance could not take effect for sixty days from the date of final publication; and if within that time a petition signed by not less than ten per cent of the electors who voted at the last preceding city election was filed in the office of the city clerk demanding that the ordinance be submitted to a vote, then the ordinance should not become effective until submitted to a referendum. Procedures for calling and holding the election were provided.

Finally, on July 1, 1961, K.S.A. 12-139 (Corrick) also became effective. That statute prohibited all cities from imposing sales taxes. It read:

"No city shall impose an excise tax, or tax in the nature of an excise, upon a sale or transfer of personal or real property, or the use thereof, or the rendering or furnishing of a service."

On April 3, 1970, K.S.A. 1970 Supp. 79-4414 became effective. That statute suspended the operation of K.S.A. 12-139 (Corrick) until the thirty-first of December, 1972.

On April 3, 1970, K.S.A. 1970 Supp. 79-4424 became effective.

That section provided in substance that no city could impose a sales tax without first submitting such proposition to a vote of the electorate and having received the approval of a majority of those voting at the election. Procedures for the holding of the election and the submission of the question were provided.

The cities of Topeka, Manhattan, and Lawrence enacted sales tax ordinances, which were duly approved by the electorate in those cities, and all three cities were levying and collecting sales taxes before March 1, 1972.

On April 11, 1972, K.S.A. 1972 Supp. 12-166 and 12-167 became effective. By 12-166, the legislature classified cities for the purpose of imposing limitations and prohibitions upon the levying of excise or sales taxes. Class 1 cities were defined as all cities in this state levying and collecting sales taxes on March 1, 1972; all other cities were included in class 2. By 12-167, class 2 cities were prohibited from imposing a sales tax.

As of April 30, 1973, K.S.A. 12-139 (Corrick) was repealed.

On the same date, April 30, 1973, K.S.A. 1972 Supp. 12-166 and 12-167 were repealed, and K.S.A. 1973 Supp. 12-172, -173 and -174 became effective. 12-172 authorized cities and counties to adopt sales tax levies, provided that the enacting ordinance or resolution be adopted by a specified majority of the members of the governing body, and provided that the proposition be first successfully submitted to a vote of the electorate. 12-173 continued the classification of cities as previously included in K.S.A. 1972 Supp. 12-166. 12-174 prohibited class 2 cities from imposing sales taxes.

In the 1975 session of the legislature, Senate Bill No. 524 was introduced. Its purpose was to authorize both cities and counties to impose sales taxes after a referendum. The bill failed to pass in 1975, but it was enacted in the 1976 session.

On April 26, 1976, Senate Bill No. 524 became effective; it appears as chapter 70 in the 1976 Laws. It amended K.S.A. 12-172 and repealed K.S.A. 12-173 and 12-174. This enactment provides in substance that cities, located in any county in which a county-wide sales tax referendum has failed, may impose a city sales tax after a successful referendum within the city. Subsection (a) of the amended statute, K.S.A. 1977 Supp. 12-172, forms the primary basis for plaintiffs' claim in this action; it will be set out fully in this opinion.

Effective May 13, 1977, K.S.A. 12-137 and 12-138 were amended; the amendments were technical, and do not change the thrust of the original statutes. These amended statutes were relied upon and followed by the City of Overland Park. They read:

"Where, under the power of cities granted by paragraph (b) of section 5 of article 12 of the constitution of Kansas, the governing body of any city by ordinance proposes to levy for revenue purposes any tax, excise, fee, charge or other exaction other than permit fees or license fees for regulatory purposes, which is not limited or prohibited or a procedure for the levy of which is not otherwise prescribed by enactment of the legislature as provided by said paragraph (b), such ordinance shall require a two-thirds (⅔) vote of the members-elect of the governing body and shall be published once each week for two (2) consecutive weeks in the official city newspaper.

"No such ordinance shall take effect until sixty (60) days after its final publication, and if within sixty (60) days of its final publication a petition signed by a number of electors of the city equal to not less than ten percent (10%) of the number of electors who voted at the last preceding regular city election shall be filed with the county election officer of the county in which such city is entirely or primarily located demanding that such ordinance be submitted to a vote of the electors, it shall not take effect until submitted to a referendum and approved by a majority of the electors voting thereon. The governing body of any city may submit any ordinance providing for such levy to a referendum without petition. Ordinances authorizing such levies submitted to referendum without petition may be passed by a majority vote of the governing body and shall be published once in the official city newspaper." K.S.A. 1977 Supp. 12-137.

"Any city election called under the provisions of this act shall be called within thirty (30) days and held within ninety (90) days after the filing of a petition demanding such election, or after the publication of an ordinance authorizing a levy for which an election is called without petition. The governing body shall pass an ordinance calling the election and fixing the date, which ordinance shall be published once in the official city newspaper. The sufficiency of the number of signers of any petition filed under the provisions of this act shall be determined by the county election officer. Every election held under the provisions of this act shall be conducted by the county election officer. The county election officer shall publish a notice of such election once each week for three (3) consecutive weeks in the official city newspaper, the first publication to be not less than twenty-one (21) days prior to such election. Said notice shall state the time of the election and the proposition which shall appear on the ballot. The proposition shall be: 'Shall revenue ordinance No. _____, entitled (title of ordinance) take effect?' " K.S.A. 1977 Supp. 12-138.

On June 27, 1977, the governing body of the City of Overland Park, with not less than two-thirds of the members-elect voting in favor, enacted ordinance No. ST-931, imposing a retail sales tax in the amount of one-half of one per cent. The ordinance provided that it should be published once each week for two consecutive weeks in the official city newspaper, and that it should

take effect sixty days after final publication unless a sufficient petition for a referendum was filed. We are told that a petition was timely filed, but was found not to contain the requisite number of valid signatures.

On June 27, 1977, when the ordinance was enacted, the blanket prohibition against city sales taxes, K.S.A. 12-139 (Corrick) had been repealed; also, the classification ordinance, K.S.A. 12-173, and the blanket prohibition of sales taxes in class 2 cities, K.S.A. 12-174, had been repealed. K.S.A. 1977 Supp. 12-137, providing for the enactment of municipal sales tax ordinances by a two-thirds vote of the members-elect of the governing body, and requiring a referendum only in the event that a proper petition for a referendum was filed, was in effect. Also, K.S.A. 1977 Supp. 12-172 was in effect. That statute provided in part as follows:

"(a) No city shall impose a retailers' sales tax under the provisions of this act unless more than one-half of the area of such city is located within a county in which a proposition to levy a countywide retailers' sales tax has been submitted to and rejected by the electors of the county on or after the effective date of this act and without the governing body of such city having first submitted such proposition to and having received the approval of a majority of the electors of the city voting thereon at an election called and held therefor. The governing body of any city may submit the question of imposing a retailers' sales tax and said governing body shall be required to submit said question upon submission of a petition signed by electors of such city equal in number to not less than ten percent (10%) of the electors of such city."

Thus, when the ordinance was enacted, there were two statutes authorizing the enactment of sales tax ordinances by cities; K.S.A. 1977 Supp. 12-137, which authorized enactment without referendum (unless a petition were filed), and K.S.A. 1977 Supp. 12-172, which made referendum mandatory.

We should mention one other statute. K.S.A. 1978 Supp. 12-188, which became effective July 1, 1978, includes a new classification system for cities. It reads substantially as follows:

"The following classes of cities are hereby established for the purpose of imposing limitations and prohibitions upon the levying of sales . . . taxes . . ..

"Class A cities. All cities in the state of Kansas levying and collecting [sales] taxes . . . on June 30, 1978.

"Class B cities. All cities in the state of Kansas not levying and collecting [sales] taxes . . . on June 30, 1978."

Overland Park was levying and collecting a sales tax on June 30, 1978, under and by virtue of the ordinance here under attack.

The central and controlling issue in this appeal is whether K.S.A. 1977 Supp. 12-172 is an enactment "applicable uniformly to all cities of the same class." Appellants, for their first issue, contend that the statute is applicable uniformly.

The Home Rule Amendment is a grant of authority by the people of this state to the cities, authorizing and empowering them to determine their local affairs and government, including the levying of taxes, *except when and as the levying of any tax . . . is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class.* At the time of the enactment of the ordinance, all cities of this state were included in a single class; the legislation designating class 1 and class 2 cities had been repealed. Thus unless K.S.A. 1977 Supp. 12-172 is "applicable uniformly to all cities," that statute cannot be considered a limitation or prohibition by the legislature of the authority granted the cities by the constitution to levy a sales tax.

Although many of our cases consider home rule powers, particularly in the areas of police power, special assessments, and criminal ordinances, only *Claflin v. Walsh,* 212 Kan. 1, 509 P.2d 1130 (1973), addresses specifically the constitutional standard of uniform applicability. In *Claflin,* we found certain statutes regarding memorials, monuments, and grave markers not uniformly applicable to all cities; therefore, Kansas City's charter ordinance was effective to remove the city from the effect of those statutes. The uniform applicability requirement construed in *Claflin* were those contained in art. 12, § 5 of the Kansas Constitution, subsection (c)(1), which defines a city's power to elect that a statute does not apply, through the mechanism of a charter ordinance. Though the uniform applicability requirement regarding taxation, in subsection (b), here involved, differs from that set forth in subsection (c)(1), the alternative requirement of statewide concern contained in (c)(1) was ignored in the *Claflin* discussion; the primary emphasis was upon the uniform applicability requirement. Therefore, the rules of construction and analysis of *Claflin* are directly applicable and are helpful in determining the present controversy.

The following quotations from *Claflin* are instructive:

"Prior to the home rule amendment Kansas cities were seriously limited in their power . . . . Cities existed by and through statutes and had only such powers as were expressly conferred by statute without resort to implication. . . . No longer are cities dependent upon the state legislature for their authority to

determine their local affairs and government. Since home rule, cities have power granted directly from the people through the constitution without statutory authorization. . . . .

"The home rule power of cities is not absolute. It is subject to the power of the legislature to act in certain areas—exclusively in some, optionally in others. These limitations on city power are expressly set forth in the home rule amendment. . . .

". . . The home rule power is subject to optional control by legislative action in four specific areas:

"(1) Enactments of statewide concern which are applicable uniformly to all cities.

"(2) Other enactments of the legislature applicable uniformly to all cities.

"(3) Enactments applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction.

"(4) Enactments of the legislature prescribing limits of indebtedness.

"Section 5(d) of Article 12 requires a liberal construction of the powers and authority granted cities for the purpose of giving to cities the largest measure of self-government. This provision simply means that the home rule power of cities is favored and should be upheld unless there is a sound reason to deny it. . . .

"In view of the liberal construction provision of Section 5(d), in determining whether a legislative enactment is applicable uniformly to all cities such a legislative intent should be clearly evident before the courts should deny a city the right to exercise home rule power in that area. . . .

"In some cases the legislative intention has been made clear and unequivocal. By specific language the legislative intent is shown to be that the statute is to be applied uniformly to all cities. . . .

"The difficulty is that in many statutes the legislative intention to have uniformity throughout the state is not expressly stated. In that situation courts are required to glean legislative intent by applying established rules of statutory construction. In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia*. . . . In addition, to be *in pari materia* statutes need not have been enacted at the same time. Statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together." (pp. 6-8.)

Additional rules of statutory construction are stated in *Callaway v. City of Overland Park*, 211 Kan. 646, 650, 508 P.2d 902 (1973):

"The primary rule for the construction of a statute is to find the legislative intent as expressed and the court is not warranted in looking beyond the plain terms of the act when it appears plain and unambiguous. . . . The historical background and changes made in a statute are to be considered by the court in determining legislative intent for the purpose of statutory construction."

The history of legislative action limiting the power of the cities to impose sales taxes is therefore relevant to ascertain the legislative intent. Appellant persuasively presents this history in such a

way as to demonstrate legislative intent to retain control over the taxing power at all times, and to require a referendum before the imposition of a local sales tax. Without detailing that history further, that intent would appear clearly evident. However, the question of uniform applicability does not end with ascertainment of legislative intent. A plain reading of K.S.A. 1977 Supp. 12-172(a) indicates that only a city having a specific relationship to its county may enact a sales tax. The only cities permitted to enact sales taxes under that subsection are those having more than one-half of their area in a county in which a proposition to levy a county-wide sales tax has been submitted to and rejected by the electors on or after April 26, 1976. Subsection (d) of K.S.A. 1977 Supp. 12-172 provides for the continuance of city sales taxes in the amount of one-half of one per cent, which were in effect on March 1, 1972, until repealed, or until the adoption of a one per cent county-wide sales tax; the continuance of existing city taxes is permitted where there is no such county tax. Clearly, K.S.A. 1977 Supp. 12-172 brings all cities within its scope, since all cities must examine their relationship with their county to determine their ability under the statute to impose a sales tax, but cities are not uniformly subject to the legislative restrictions. Some cities—all of the same class—are permitted to continue imposing and collecting sales taxes; some now collecting them may not be permitted to do so in the future, depending upon county action; still others may or may not be permitted to levy and collect sales taxes, depending upon the action of the board of county commissioners in submitting or failing to submit the issue of a county-wide sales tax (of one-half of one per cent or of one per cent) to referendum, and depending further upon the success or defeat of the county-wide measure at the polls. If the legislature wishes to limit or prohibit some cities from imposing sales taxes, and to permit others to do so, it must explicitly follow the constitutional mandate. Explicit classification and uniform applicability to all cities of the same class are required, where complete uniformity is not desired.

We have not overlooked other arguments advanced by industrious counsel, but we find them unpersuasive. For the reasons stated above, we hold that K.S.A. 1977 Supp. 12-172 is not applicable uniformly to all cities, and therefore was constitutionally insufficient to limit Overland Park's home rule power to impose a sales tax.

Appellants argue in the alternative that even if K.S.A. 1977 Supp. 12-172 is not uniformly applicable, it is an enactment partially applicable to Overland Park and therefore, article 12, § 5(c)(1) requires that the city must enact a charter ordinance if it wishes to elect that the statute not apply to it. Charter ordinance procedure is required where there exists a conflict between legislative enactment and the city's proposed ordinance. *City of Junction City v. Lee,* 216 Kan. 495, 532 P.2d 1292 (1975).

This argument is unpersuasive. The charter ordinance procedure is required where the state and local enactments address the same subject, and there is a substantive conflict between them. Case law supports this analysis. *Leavenworth Club Owners Assn. v. Atchison,* 208 Kan. 318, 492 P.2d 183 (1971); *Claflin v. Walsh,* 212 Kan. 1; *City of Junction City v. Lee,* 216 Kan. 495; *Garten Enterprises, Inc. v. City of Kansas City,* 219 Kan. 620, 549 P.2d 864 (1976). In the case at hand, there was no substantive conflict between K.S.A. 1977 Supp. 12-172 and the city's ordinance. The power to tax is granted to the cities by the Constitution. 12-137 and 12-172 both provided a method by which cities could enact sales taxes. Overland Park chose to follow the alternative procedure provided by K.S.A. 1977 Supp. 12-137. It is not infrequent that cities are given a choice of statutory procedures by the legislature, in order to accomplish a particular purpose. In *State, ex rel., v. City of Topeka,* 172 Kan. 745, 243 P.2d 218 (1952), we said:

"The legislature may in its discretion provide one or more methods for a municipality to accomplish any purpose, and the fact that there may be two general laws which reach the same end does not make either bad or one exclusive of the other." (p. 749.)

Finally, appellants contend that the trial court improperly granted summary judgment. There were no facts in dispute when the matter came on for hearing before the trial court, and appellants were granted leave to file affidavits and to fully brief the matter before the trial court entered its final order in this action. There being no disputed issues of fact, and the sole issues being questions of law, we conclude that the trial court was correct in resolving the issues and ruling upon the merits when it did. The record was ample for the use of this court on appeal.

Appellee suggests that the ordinance has been validated by

curative legislation, K.S.A. 1978 Supp. 12-193, by which the legislature recognized Overland Park as a city levying a sales tax on June 30, 1978, classified it as a class 1 city with other cities already levying sales taxes, and authorized it to continue to levy and collect the tax. In view of the disposition we make of this case, ruling upon that issue is unnecessary.

The judgment of the trial court is affirmed.

FROMME, J., not participating.