No. 50,749

CITY OF JUNCTION CITY, KANSAS, *Appellee,* v. JANICE MARIE GRIFFIN, a/k/a JANICE MARIE JOHNS, *Appellant.*

(607 P.2d 459)

Opinion filed March 1, 1980.

*Steven Hornbaker,* of Harper & Hornbaker, Chartered, of Junction City, was on the briefs for the appellant.

*Richard A. Pinaire,* city attorney, argued the cause, and *Michael P. McKone,* city attorney, was with him on the briefs for the appellee.

*Frank A. Bien,* of Topeka, argued the cause and *John R. Martin,* of Topeka, was with him on the *amicus curiae* brief for the League of Kansas Municipalities.

The opinion of the court was delivered by

FROMME, J.: On rehearing our prior opinion in *City of Junction City v. Griffin,* 226 Kan. 516, 601 P.2d 684 (1979), is withdrawn and the following opinion is substituted therefor.

Janice Marie Griffin was found guilty by a jury of solicitation for prostitution in violation of a city ordinance of Junction City, 12-509(a). It was apparently her misfortune to have solicited an off-duty policeman. She was sentenced under City Ordinance 12-509(b) to a mandatory 30 days in jail with no probation. She appealed, claiming the ordinance under which she was sentenced was constitutionally impermissible on three grounds: First, the ordinance violated the United States Constitution; second, the ordinance infringed the separation of powers doctrine, in that the ordinance passed by the city attempts to take over the judicial power of determining the extent of punishment; and third, the penalty consisting of a 30-day mandatory jail sentence is so disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity.

In the first opinion of this court the above questions were not reached. The court reversed the conviction and set aside the sentence on the ground the Junction City ordinance relating to procedure and to sentencing in the municipal court was constitutionally impermissible and beyond the authority granted to cities in the Home Rule Amendment to the Kansas Constitution (Kan. Const. art. 12, § 5). This holding was based on the belief that the Code of Procedure for Municipal Courts, K.S.A. 12-4101 through 12-4701, was an enactment of statewide concern which was uniformly applicable to all cities.

On Motion for Rehearing it was brought to this court's attention that Junction City was one of 43 cities which had opted out from under the Code of Procedure. All 43 cities had been advised that the Kansas Code of Procedure for Municipal Courts was not uniformly applicable to all cities. In order that we might reexamine this question a rehearing was granted and additional briefs were filed.

The Home Rule Amendment, Kan. Const. art. 12, § 5, became effective on July 1, 1961. In pertinent part it reads as follows:

"§ 5 Cities' powers of home rule. (a) The legislature shall provide by general law, applicable to all cities, for the incorporation of cities and the methods by which city boundaries may be altered . . . .

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: Provided, That the legislature may establish not to exceed four classes of cities for the purpose of imposing all such limitations or prohibitions. Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, to enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness. All enactments relating to cities now in effect or hereafter enacted and as later amended and until repealed shall govern cities except as cities shall exempt themselves by charter ordinances as herein provided for in subsection (c).

"(c) (1) Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city.

"(2) A charter ordinance is an ordinance which exempts a city from the whole or any part of any enactment of the legislature as referred to in this section and which may provide substitute and additional provisions on the same subject. Such charter ordinance shall be so titled, shall designate specifically the enactment of the legislature or part thereof made inapplicable to such city by the adoption of such ordinance and contain the substitute and additional provisions, if any, and shall require a two-thirds vote of the members-elect of the governing body of such city. . . .·

. . . . .

"(d) Powers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government." Emphasis supplied.

By virtue of this constitutional amendment cities are no longer dependent upon the State legislature for authority to determine their local affairs and government. Cities have power granted directly from the people through the constitution. They no longer need specific legislative authorization to pass a particular ordinance. *Claflin v. Walsh,* 212 Kan. 1, Syl. ¶ 1, 509 P.2d 1130 (1973). This home rule power of a city is subject, however, to optional control by legislative action in four specific areas mentioned in

the *Claflin* case. The area here considered concerns an enactment of statewide concern which is applicable to all cities. In *Claflin,* 212 Kan. 1, Syl. ¶ 3, it is held that Article 12, Section 5(*d*) of the Constitution of Kansas requires a liberal construction of the powers and authority granted for the purpose of giving cities the largest measure of self-government. See also *Capitol Cable, Inc. v. City of Topeka,* 209 Kan. 152, Syl. ¶ 3, 495 P.2d 885 (1972). The *Claflin* case involved a charter ordinance at variance with a statutory provision for erection of memorials. K.S.A. 73-401 *et seq.* It was held that a section of the act, K.S.A. 73-407, was not uniformly applicable to all cities and that the city had the right to make changes by charter ordinance so as to place control with the Board of City Commissioners instead of a Board of Trustees. In the opinion it was pointed out that 73-407 was not uniformly applicable to all cities because it permitted three variations in methods of raising funds which were dependent on the size of the cities involved.

One section of the Kansas Code of Procedure for Municipal Courts, K.S.A. 12-4105, has been called to our attention as not being uniformly applicable to all cities and therefore permitting cities to opt out from under the code. It reads:

"The municipal court shall be presided over by a municipal judge. The judge shall be selected in the manner provided by statute. The person so selected shall be a citizen of the United States and at least eighteen (18) years of age. In cities of the first class, the person selected shall be an attorney admitted to the practice of law in the state of Kansas."

K.S.A. 12-4105 of the Code of Procedure for Municipal Courts does not apply uniformly to all cities. The last quoted sentence applies only to cities of the first class and requires the municipal judge of a first class city to be an attorney. Under the third sentence of this section, applying to second and third class cities, persons who are not attorneys are qualified to hold office as a municipal judge if they are citizens of the United States and are at least eighteen (18) years of age.

In order to preserve the uniformity of the code it has been urged that this section be declared no part of the enactment of the procedural code. However, this section is one of the sections included in L. 1973, ch. 61. It is clearly one of the sections comprising the enactment. The division into chapter, article and sections in the Kansas Statutes Annotated does not have the effect

of making separate enactments of a single bill passed by the legislature of the State of Kansas. *Marks v. Frantz,* 179 Kan. 638, 298 P.2d 316 (1956).

Another argument is made that the legislature by passing the Code of Procedure for Municipal Courts, K.S.A. 12-4101 through 12-4701, has intended to preempt the field.

The court has consistently rejected the doctrine of implied preemption of a particular field. Legislative intent to reserve exclusive jurisdiction to regulate in an area must be clearly manifested by State law. *City of Lyons v. Suttle,* 209 Kan. 735, 738, 498 P.2d 9 (1972); *City of Junction City v. Lee,* 216 Kan. 495, 503, 532 P.2d 1292 (1975); *Garten Enterprises, Inc. v. City of Kansas City,* 219 Kan. 620, Syl. ¶ 3, 549 P.2d 864 (1976). Legislative intent to preempt a field is only the first of two requirements for preemption when it concerns the rights of cities.

It is apparent in this case, under K.S.A. 12-4103, that the legislative intent was to provide a uniform procedure for all municipal courts. Uniform procedure is desirable. However, statutory expression of intent to make a law uniform cannot supplant the constitutional requirement of uniformity. The constitution empowers a city by charter ordinance to opt out from any State enactment which is not uniformly applicable to all cities. The second requirement is uniform application of the State law to all cities.

The grant of home rule power to cities under Article 12, § 5 of the Kansas Constitution has therefore added a new dimension to be considered in determining whether the legislature has occupied a field. Legislative intent to preempt a field is alone insufficient. It is now necessary to examine the provisions of the State enactment to determine whether the constitutional standard of uniform application to cities has been met. If not uniform, legislative intent as expressed within the enactment will not overcome the constitutional requirement for uniform application. *Clark v. City of Overland Park,* 226 Kan. 609, 602 P.2d 1292 (1979). The legislature may preempt the constitutional powers of cities only in the manner prescribed in the constitution. "As between the will of the people expressed in the constitution, and that expressed in the statute, the former always prevails." *State, ex rel. Goodin v. Thoman,* 10 Kan. 191, 197 (1872).

A strong argument is made that a code of procedure in munici-

pal courts is a matter of statewide concern and should not be left to determination by local government. We are inclined to agree, but the language of the constitutional amendment, which empowers cities to determine their "local affairs and government," was never intended as a limitation on the power, so as to restrict it to matters of strictly local concern. Barkley Clark, Associate Dean and Professor of Law at the University of Kansas published a comprehensive article *State Control of Local Government in Kansas: Special Legislation and Home Rule,* 20 Kan. L. Rev. 631, 669 (1972). He points out:

"Nearly all matters dealt with by ordinance are of concurrent interest to both city and state; limiting home rule power to 'purely' local matters as the courts in autonomy-type states have sometimes been compelled to do would totally emasculate article 12, section 5. . . ."

So, even if a legislative enactment by the State addresses a matter which may be considered of statewide concern, a city remains free to take legislative action by charter ordinance concerning that same matter unless the legislative enactment by the State applies uniformly to all cities. Regardless of whether an enactment of the State legislature addresses a matter of statewide or a matter of local concern, a city may in either case act by charter ordinance to exempt itself from all or part of the enactment unless the State enactment applies uniformly to all cities. Kan. Const. art. 12, § 5(*c*)(1). The legislature may foreclose municipal legislative action only by an enactment of uniform application to all cities.

The Kansas Code of Procedure for Municipal Courts, K.S.A. 12-4101 through 12-4701, although an enactment of statewide concern, is not applicable uniformly to all cities by reason of K.S.A. 12-4105 requiring municipal judges in first class cities to be attorneys while permitting second and third class cities to have lay judges. Therefore, Charter Ordinance No. 8 of Junction City validly exempted the city from the provisions of K.S.A. 12-4101 through 12-4701, and Junction City Ordinances 12-509(a) and 12-509(b) are valid substitute and additional provisions passed by the city under its home rule powers.

We turn now to the constitutional questions originally raised on appeal. It is argued the Junction City ordinance prohibiting solicitation for prostitution and providing a mandatory jail sentence on conviction violates the United States Constitution, in-

fringes the separation of powers doctrine by restricting the judicial power of the court, and provides a sentence so disproportionate to the seriousness of the crime that it shocks the conscience and offends fundamental notions of human dignity. We hold otherwise.

Junction City adjoins a large military reservation, where several thousand U.S. Army troops are stationed. Prostitution is notoriously a problem in towns which adjoin military installations. The city governing body was well aware of its past problems in this area of social concern when it adopted Charter Ordinance No. 8. It is understandable that the governing body was looking for more stringent measures to deal with what had become a local problem. Ordinance No. 12-509(b) prescribing mandatory jail sentences and providing for no probation was adopted in attempting to alleviate prostitution.

Essentially all the questions originally raised in this appeal were addressed and disposed of in *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978). In *Freeman* the appellant attacked the constitutionality of K.S.A. 1977 Supp. 21-4618 which requires that probation and parole be denied when the defendant has used a firearm in the commission of an Article 34 crime. In *Freeman,* the statute providing for a mandatory sentence was attacked as being constitutionally impermissible on three grounds: (1) A mandatory five-year sentence constituted cruel and unusual punishment; (2) it denied equal protection of the laws; and (3) it deprived defendant of liberty without due process of law because it deprived the courts of their judicial prerogatives in determining sentence.

In *Freeman,* 223 Kan. 362, Syl. ¶ 2, it was held:

"In determining whether the length of a sentence offends the constitutional prohibition against cruel punishment three techniques should be considered:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishment imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense."

After applying these tests to the facts of the present case, in which a 30-day mandatory jail sentence without probation was imposed for soliciting for prostitution, we hold the sentence does not offend. The punishment, a 30-day mandatory jail sentence without probation, is neither cruel nor unusual in its method, nor so disproportionate to the crime of solicitation for prostitution that it shocks the conscience and offends fundamental notions of human dignity. See *Freeman,* 223 Kan. 362, Syl. ¶ 1.

The contention that the sentence denied equal protection of the laws is not persuasive. A State statute or a city ordinance may single out a class of persons for distinctive treatment if the classification bears a rational relation to the purpose of the legislation and if persons similarly inclined will receive like treatment. See *Freeman,* 223 Kan. 362, Syl. ¶ 4.

Finally it is argued the mandatory sentence provision of the ordinance deprives the defendant of liberty without due process of law because the ordinance takes away a prerogative of the judicial branch of government, that of fixing a sentence commensurate with the seriousness of the crime. In *Freeman,* 223 Kan. 362, Syl. ¶ 6, we held the provisions of K.S.A. 1977 Supp. 21-4618 and 22-3717(8), which deny probation and parole privileges to a defendant convicted of using a firearm in the commission of an Article 34 crime, do not impose such a restriction on the judicial power of the sentencing judge as would constitute an impermissible legislative usurpation of the court's prerogatives.

Accordingly, we hold the ordinance was valid and within the home rule powers of the city. It was not otherwise constitutionally impermissible.

Judgment is affirmed.

HERD, J., dissenting: It stands undisputed that the legislative intent in the enactment of K.S.A. 12-4101 through 12-4701 was to provide Kansas with a code of procedure for municipal courts. K.S.A. 12-4102 states:

"This code governs the practice and procedure in *all* cases in municipal courts." Emphasis added.

K.S.A. 12-4103 states:

"This code is intended to provide for the just determination of every proceeding for violation of city ordinances. Its provisions shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjus-

tifiable expense and delay. If no procedure is provided by this code, the court shall proceed in any lawful manner consistent with any applicable law and not inconsistent with this code."

One would be hard put to draft a more definitive statement of legislative intent and purpose. Article 12, § 5 of the Kansas Constitution provides a city may, pursuant to powers of home rule, escape the confines of legislation in the event such enactments are not "of statewide concern applicable uniformly to all cities . . . ." I am advised K.S.A. 12-4105 renders the Code of Procedure for Municipal Courts not uniformly applicable because it provides:

"In cities of the first class, the person selected [for municipal judge] shall be an attorney admitted to the practice of law in the state of Kansas."

The remaining fifty-seven code provisions are admittedly uniformly applicable.

This court stated in *Claflin v. Walsh,* 212 Kan. 1, 7, 509 P.2d 1130 (1973):

"[A] city's power to act in the same area should be upheld unless the legislature has clearly preempted the field so as to preclude city action."

The legislature clearly intended to preempt the field and for solid reasons. Public knowledge of court procedure is essential for due process. More people have contact with the municipal courts than with all other courts combined, making procedural due process in the municipal courts very important. Most people form their impressions of courts and the law from their experience in municipal court. It is a matter of statewide concern well illustrated by the long and arduous work of the Kansas Judicial Council which studied the matter for a number of years. That study culminated in the drafted bill submitted to the legislature in 1973, S.B. 205.

I would hold the Code of Procedure for Municipal Courts exempt from Home Rule because it is of statewide concern and is uniformly applicable to all cities on authority of *Claflin.* All of the procedural provisions of the act meet the strictest construction of the constitution. The only issue of contention pertains to judicial qualification in first class cities. Since judicial qualification is not procedural and the legislature intended the act to be uniformly applicable, I would so construe it. As we stated in *State v. Motion Picture Entitled "The Bet,"* 219 Kan. 64, 71, 547 P.2d 760 (1976):

"We realize that to construe the statute to meet constitutional standards we may be subject to the accusation that we are invading the province of the legislature. However, after considering the manifest intention of the legislature when it passed K.S.A. 21-4301, *et seq.,* and our past difficulties in this area of regulating obscenity we feel fully justified in construing and limiting the present statute to meet constitutional standards. Such was the original intent of the Kansas legislature."

More recently, this court stated in *State v. Next Door Cinema Corp.,* 225 Kan. 112, 118, 587 P.2d 326 (1978):

"As such the language is mere surplusage and may be omitted from the statute without doing violence to the obvious intent of the legislature.

" 'In construing a statute, the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words or references at some place in the statute must be omitted or inserted.' *Parker v. Continental Casualty Co.,* 191 Kan. 674, Syl. ¶ 4, 383 P.2d 937 (1963)."

Although both *"The Bet"* and *Next Door Cinema* dealt with judicial construction of the constitutionality of legislation, I believe the court's strong reliance on legislative intent in statutory construction is applicable here.

The court possesses inherent authority to draft and amend the procedural rules used in courts. That authority has been specifically recognized with respect to K.S.A. 60-2607. Gard, *Highlights of the Kansas Code of Civil Procedure,* 2 Washburn L.J. 199, 202 (1963). Similar powers are provided in K.S.A. 1979 Supp. 22-4601 and K.S.A. 12-4701. The action taken by the majority erodes this power and with respect to the municipal court code, relinquishes it to individual city councils and city governing boards to create a disjointed mass of procedural rules that vary from city to city. In the case of Junction City, those procedural rules contain provisions of doubtful constitutionality.

In the interest of good government, we should have used our powers of construction and construed the statute to conform to legislative intent, striking the judicial qualification provision from the code of procedure, thereby leaving a uniform code of municipal court procedure for the citizens of this state.

SCHROEDER, C.J., joins in the foregoing dissenting opinion.