Jeffrey A. Mason, Counsel Northwest Kansas Groundwater Management District No. 4 214 E. 10th Street, Box 767 Goodland, Kansas 67735
Dear Mr. Mason:
As counsel for Northwest Kansas Groundwater Management District No. 4 (GMD #4), you inquire whether a county may pass a resolution prohibiting cloud seeding weather modification in that county.
You indicate that after an election the Board of County Commissioners of Rawlins County, Kansas passed a resolution declaring it a crime to engage in weather modification by way of cloud seeding over Rawlins County, Kansas. Violation of the resolution is a Class B non-person misdemeanor, with a fine not to exceed $1,000, and/or a jail sentence not to exceed six months in the county jail. Decatur County passed a similar resolution but without an election. Both Rawlins and Decatur County are within the geographic area of a groundwater management district (hereinafter GMD) that has obtained a permit and license to engage in weather modification pursuant to the Kansas Weather Modification Act [1]. The resolution prohibiting weather modification was passed in each county using home rule power.
The power of county home rule is statutory and authorizes counties to transact all county business and perform the powers of local legislation as appropriate, subject to certain restrictions.[2] Among the statutory restrictions, the following are applicable:
 "(a)(1) Counties shall be subject to all acts of the legislature which apply uniformly to all counties.
. . . .
 "(b) Counties shall apply the powers of local legislation granted in subsection (a) by resolution of the board of county commissioners. If no statutory authority exists for such local legislation other than that set forth in subsection (a) and the local legislation proposed under the authority of such subsection is not contrary to any act of the legislature, such local legislation shall become effective upon passage of a resolution. . . . [If] the legislation . . . is contrary to an act of the legislature which is . . . not uniformly applicable to all counties, such legislation shall become effective by passage of a charter resolution. . . .
 "(c) Any resolution . . . which conflicts with the restrictions in subsection (a) is null and void."[3]
Thus, a county may exercise home rule by resolution if no statutory authority exists for the local legislation. If statutory authority exists in the form of an act of the Legislature which applies uniformly to all counties, a county may enact a resolution provided the resolution does not conflict with the act. Finally, if statutory authority exists which conflicts with the resolution, a county may enact a charter resolution provided that the act of the Legislature is not uniformly applicable to all counties.
Two statutes specifically authorize counties "to establish or to participate in weather modification programs" and levy a tax to pay the costs.[4] The statutes, however, do not address whether a county may prohibit weather modification. Legislative history indicates that the statutes were intended to provide specific authority for a county to participate, given that there were eleven counties already involved in weather modification,[5] and such participation benefitted groundwater conservation.[6] Because there is no indication that the Legislature intended that either of these statutes provide a county the authority to prohibit weather modification, our analysis continues using home rule to determine whether a county can enact a resolution prohibiting weather modification by cloud seeding.
The Kansas Weather Modification Act (Act)[7] provides for licensing and regulating weather modification throughout the State of Kansas and thus, our first step is to determine whether it is an "act of the legislature which [applies] uniformly to all counties."[8] If the Act applies uniformly to all counties, a county may enact a resolution that does not conflict.[9] If the Act does not apply uniformly to all counties, then a county may charter out of the Act's provisions and enact substitute provisions. The only cases that shed light on the issue of uniformity involve city home rule which is established in the Kansas Constitution.[10] However, the Kansas appellate courts have concluded that the constitutional home rule power accorded to cities is "similar and parallel" to county home rule power that has been granted by the Legislature.[11] Therefore, our analysis will focus on city home rule cases.
In Claflin v. Walsh,[12] the Kansas Supreme Court interpreted the constitutional limitation on city home rule which makes the latter subject to "enactments . . . which are applicable uniformly to all cities."[13] In Claflin, the Court reviewed K.S.A. 73-407 which dealt with the maintenance of county memorials and determined that K.S.A. 73-407
did not uniformly apply to all cities because it treated cities differently depending upon their classification and population. The Court concluded that "in order for a statute to be applicable uniformly to all cities there must be no exceptions."[14]
While Claflin dealt with the uniformity of one statute, City ofJunction City v. Griffin[15] addressed the uniformity issue in the context of an entire enactment: the Kansas Code of Procedure for Municipal Courts.[16] The Court reviewed the original enactment of the Code found in Chapter 61 of the 1973 Session Laws and noted that "the legislative intent was to provide a uniform procedure for all municipal courts."[17] However, one of the sections in the original enactment treated cities of the first class differently from other cities, and, therefore, the Court concluded that this one section made the entire enactment nonuniform:
 "In order to preserve the uniformity of the code it has been urged that this section be declared no part of the enactment of the procedural code. However, this section is one of the sections included in L. 1973, ch. 61. It is clearly one of the sections comprising the enactment. The division into chapter, article and sections in the Kansas Statutes Annotated does not have the effect of making separate enactments of a single bill passed by the legislature of the State of Kansas."[18]
In 1994, the Kansas Supreme Court, citing Griffin, concluded that the Kansas Water Pollution Act is nonuniform because one of the statutes in the original enactment applies only to cities of the first class.[19]
Finally, Home Builders Assn. of Greater Kansas City v. City of OverlandPark,[20] addressed the issue of whether K.S.A. 12-194, which on its face was uniform, became nonuniform because it was part of a 1978 enactment establishing a local retailers' sales tax which was later amended to include a nonuniform provision. In Home Builders, the City of Overland Park enacted a charter ordinance that exempted itself from K.S.A. 12-194 and imposed an excise tax on platting real property. K.S.A. 12-194 prohibited cities from imposing any excise tax other than a retailers' sales tax.
The threshold issue in the Home Builders case was whether K.S.A. 12-194
was a "stand-alone" provision or whether it was part of the local retailers' sales tax enactment.[21] If K.S.A. 12-194 was a "stand alone" provision and not part of the local retailers' sales tax enactment, then the statute was uniform and the City could not charter out of its provisions. If, however, K.S.A. 12-194 was part of the local retailers' sales tax enactment, the Court would review the enactment to determine whether there was any nonuniform provision in the enactment. If the Court found a nonuniform provision, then K.S.A. 12-194 would also be nonuniform by virtue of its being part of the local retailers' sales tax enactment.
Noting that K.S.A. 12-194 had "a long and confusing history," the Court's analysis focused on the original enactment of the local retailers' sales tax act in 1978 of which K.S.A. 12-194 was a part. The Court determined that K.S.A 12-194 concerned the same subject matter as the rest of the local retailers' sales tax enactment.[22] Thus, the Court opined that K.S.A. 12-194 is part of the local retailers' sales tax enactment.
The next step in the Court's analysis focused on whether any of the provisions of the 1978 retailers' sales tax enactment became nonuniform by virtue of a later amendment. Citing Claflin and Griffin, the Kansas Court of Appeals reaffirmed Griffin's holding that "the question of uniformity goes to the entirety of the enactment in question, and that if any statute within the enactment is nonuniform then the entire enactment is considered nonuniform."[23] The Court discovered that K.S.A. 12-187, which was part of the original 1978 enactment, was amended in 1992 to include a provision that made K.S.A. 12-187 nonuniform. Consequently, the Court held that the entire local retailers' sales tax enactment, including K.S.A. 12-194, was nonuniform.[24]
With this background in mind, we now review the Kansas Weather Modification Act to determine whether it is an "act of the legislature which [applies] uniformly to all counties."[25] The Act establishes a regulatory scheme to issue licenses to individuals[26] conducting weather modification and to issue permits[27] for each specific weather modification project or program specific to a geographic area.[28] No person, [defined to include a natural person, partnership, organization, corporation, municipality or agency or department of the State][29] may engage in any activity for weather modification or control without a license and permit, nor may the person violate any term or condition imposed upon his license and permit by the Kansas Water Authority.[30]
As part of this comprehensive statutory scheme, the Kansas Water Authority (hereinafter Authority) does not issue a permit unless it determines that the proposed weather modification activities are designed and reasonably expected to provide an economic benefit to the people of the area in which the operation will be conducted, or unless the weather modification will benefit the people of the State of Kansas, and is scientifically and technically feasible.[31] Additionally, the Authority must find that the "project or program includes adequate safeguards for the protection of property, health, safety and welfare" and the applicant for a permit must file "proof of ability to respond in damages for liability" resulting from accidents arising from the weather modification.[32] The Director of the Kansas Water Office is authorized to revise, suspend, or modify the terms and conditions of a permit when necessary to protect the health, safety, or property of any person or to protect the environment.[33]
The Kansas Weather Modification Act was enacted in L. 1974, Ch. 321 and can be found in the Kansas Statutes Annotated at K.S.A. 82a-1401 et seq. All of the provisions in the 1974 enactment apply uniformly to all counties. While some of the statutes in the original enactment have been amended, none have been amended in such a way as to create nonuniformity which, under a Home Builders analysis, would make the entire Act nonuniform.
We do note that in 1976, Senate Bill No. 874[34] was enacted authorizing counties to establish weather modification programs and impose a tax, but prohibiting certain counties with designated populations from imposing the tax. While this nonuniform statute was designated by the Revisor of Statutes as K.S.A. 82a-1425 and placed immediately following the statutes in the Kansas Weather Modification Act, it is our opinion that K.S.A. 82a-1425, while nonuniform, is not part of the Kansas Weather Modification Act because it was not a part of the original 1974 enactment. Moreover, while the Legislature has amended K.S.A. 82a-1425 since 1976, the Legislature has never made K.S.A. 82a-1425
a part of the Kansas Weather Modification Act.
Our determination that the Kansas Weather Modification Act is uniformly applicable, and thus not subject to charter, does not end our analysis because uniform applicability does not preclude a county from exercising its powers of local legislation provided such legislation does not conflict with the uniform statute and the Legislature has not clearly preempted the field so as to preclude county action.[35] In MissouriPacific Railroad v. Bd. of Greeley County Comm'rs,[36] the Court invalidated a home rule resolution that required fencing of railroad dirt embankments, restricted a railroad's right to acquire certain land and provided criminal penalties for violations because the resolution conflicted with uniform statutes regulating railroads. In determining whether a conflict existed, the Court concluded that the primary method of determining whether a resolution is inconsistent with a statute is whether the resolution prohibits what the state law permits or that state law prohibits what the resolution permits.[37] In Board of CountyComm'rs of Trego County v. Division of Property Valuation, KansasDepartment of Revenue,[38] the Court invalidated a resolution that attempted to impose a requirement that a county appraiser be licensed. The Court opined that the additional requirement conflicted with a uniform statute that established the qualifications for county appraisers.
The Court has also addressed whether an ordinance and a state law conflict in circumstances similar to ours. In Trimble v. City of Topeka,[39] the Court invalidated a city ordinance attempting to regulate the business of barbering by granting licenses to barbers not licensed by the State and denying barbers licensed by the State a right to work as barbers until licensed by the city. The Court opined that the ordinance conflicted in that it denied rights granted by the State, granted rights denied by the State and in sum nullified State law.[40] The Court reasoned that while the State has granted power to the city to enact ordinances to guard the public health, cities may not ignore the State's own regulatory acts, or deny rights granted by the State and in effect nullify State law.[41]
Similarly, the county resolutions in question nullify State law by interfering with a right granted by a State license. It is therefore our opinion that a county resolution prohibiting weather modification conflicts with the Kansas Weather Modification Act and is, therefore, an improper use of county home rule. Given this conclusion, it is not necessary to determine whether the Act preempts a county's ability to legislate in the area of weather modification. Finally, because the Act applies uniformly to all counties, a county may not charter out of the Act's provisions.
In light of our answer to your first question, we need not address your second, third and fourth questions regarding how such a resolution is adopted; whether such a crime may
be punishable by both a fine and jail sentence, and who may be punished for violating the county resolution.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm
[1] K.S.A. 82a-1401 et seq.
[2] K.S.A. 1999 Supp. 19-101a, as amended by L. 2000, Ch. 159, § 2.
[3] Id.
[4] K.S.A. 19-212f and K.S.A. 82a-1425.
[5] Minutes, Senate Committee on Energy and Natural Resources, February 17, 1976.
[6] Minutes, Senate Committee on Energy and Natural Resources, March 4, 1975.
[7] K.S.A. 82a-1401 et seq.
[8] K.S.A. 1999 Supp. 19-101a(a)(1).
[9] Missouri Pacific Railroad v. Bd. of Greeley County Comm'rs,231 Kan. 225, 227 (1982).
[10] Kan. Const., Art. 12, § 5.
[11] Missouri Pacific Railroad v. Bd. Of Greeley County Comm'rs,231 Kan. 225, 226 (1982).
[12] 212 Kan. 1 (1973).
[13] While the county home rule statute, K.S.A. 1999 Supp. 19-101a(a)(1), as amended, refers to "acts of the Legislature which apply uniformly to all counties," as opposed to city home rule which refers to "enactments
applicable uniformly to all cities," one commentator has noted that the legislative intent behind K.S.A. 1999 Supp. 19-101a was "to capture with fewer words the essence of the City Home Rule Amendment." Heim, Home RulePower for Cities and Counties in Kansas, 66 Journal of the Kansas Bar Association, 26, 32 (January, 1997).
[14] Id. at 9.
[15] 227 Kan. 332 (1980).
[16] K.S.A. 12-4101 et seq.
[17] 227 Kan. at 336.
[18] 227 Kan. at 335-336. (Emphasis added.)
[19] City of Wichita v. Kansas Taxpayers Network, Inc., 255 Kan. 534, 537
(1994).
[20] 22 Kan. App. 2d 649 (1996).
[21] K.S.A. 12-187 et seq.
[22] Id. at 665.
[23] Id. at 663.
[24] Id. at 668.
[25] K.S.A. 1999 Supp. 19-101a(a)(1), as amended.
[26] K.S.A. 82a-1407.
[27] K.S.A. 82a-1405.
[28] K.S.A. 82a-1416.
[29] K.S.A. 82a-1402.
[30] K.S.A. 82a-1406.
[31] K.S.A. 82a-1411(c)(1).
[32] Ibid., subsections (a)(4) and (c)(3).
[33] K.S.A. 82a-1415.
[34] L. 1976, Ch. 114.
[35] Board of County Comm'rs of Trego County v. Div. of PropertyValuation, Kansas Department of Revenue, 261 Kan. 927 (1997); MissouriPacific Railroad v. Bd. of Greeley County Comm'rs, 231 Kan. 225 (1982); Attorney General Opinion No. 96-54.
[36] 231 Kan. 225 (1982).
[37] 231 Kan. at 227.
[38] 261 Kan. 927 (1997).
[39] 147 Kan. 111 (1938).
[40] 147 at 116.
[41] 147 at 117. We recognize that this case was decided prior to passage of constitutional home rule for cities, but believe it is instructive in determining whether a conflict exists in this county/statutory home rule analysis.