No. 83,168

BIGS, *et al.*, *Appellees*, v. CITY OF WICHITA, KANSAS, *Appellant*.

(23 P.3d 855)

Opinion filed June 1, 2001.

*Sharon L. Dickgrafe,* assistant city attorney, argued the cause, and *Gary E. Rebenstorf,* city attorney, was with her on the briefs for appellant.

*David R. McClure,* of Fettis & McClure, of Wichita, argued the cause, and *Everett C. Fettis,* of the same firm, was with him on the brief for appellees.

*Rebecca S. Rice,* of Topeka, was on the brief for *amicus curiae* Kansas Retail Liquor Dealers Association.

*Ezra J. Ginzburg,* assistant attorney general, was on the brief for *amicus curiae* Kansas Department of Revenue, Division of Alcoholic Beverage Control.

*W. Robert Alderson,* of Alderson, Alderson, Weiler, Conklin, Burghart & Crow, L.L.C., of Topeka, was on the brief for *amicus curiae* Kansas Beer Wholesalers Association.

*Robert E. Duncan, II,* general counsel, of Topeka, was on the brief for *amicus curiae* Kansas Wine and Spirits Wholesalers Association.

*Sandra Jacquot* and *Larry Kleeman,* of Topeka, were on the brief for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Plaintiffs (Licensees) are private clubs and drinking establishments that brought this action against the City of Wichita (City) seeking refunds of excess liquor license fees collected by the City between July 1, 1988, and November 28, 1995. The district court certified a class, denied the City's motions for summary judgment, and granted Licensees' cross-motion for summary judgment. The City appealed. The case was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c).

In ruling on the summary judgment motions, the trial court made the following findings of facts:

"1. Plaintiffs and the class members are private clubs and/or drinking establishments located within the City limits of Wichita, Kansas, and licensed by Defendant to conduct business within the corporate City limits.

"2. Defendant is a municipal corporation.

"3. Plaintiffs and the class members bring this action in restitution to recover excess liquor license fees charged and collected by Defendant from them between July 1, 1988 and November 28, 1995.

"4. The Plaintiffs and the class members at all times material herein, were required to obtain a city liquor license and pay a license fee established by Defendant in order to do business.

"5. On August 28, 1984, Defendant adopted Charter Ordinance 96 pursuant to its Home Rule Authority. The charter ordinance exempted the City of Wichita from the provisions of K.S.A. 41-2622.

"6. On July 7, 1987, Defendant adopted Charter Ordinance No. 105 pursuant to its Home Rule Authority. The Charter Ordinance exempted the City of Wichita from the provisions of K.S.A. 41-2622 and repealed Charter Ordinance 96.

"7. Pursuant to Charter Ordinance No. 105, on December 22, 1987, Defendant adopted a Resolution which established licensing fees for clubs and drinking establishments in excess of those set forth in K.S.A. 41-2622.

"8. Prior to passage of the Resolution on December 22, 1987, Defendant held public hearings in which it represented to licensees that an increase in license fees was necessary to help offset its cost of regulation and enforcement of liquor licenses.

"9. On July 1, 1988, K.S.A. 41-2622 was amended by the state legislature. By operation of law, the amendment rescinded Charter Ordinance No. 105 and the enacting Resolution of December 22, 1987 in so far as they conflicted with it.

"10. From July 1, 1988 until November 28, 1995, Plaintiffs and the class members annually received licenses from the City of Wichita and paid licensing fees in excess of those set forth in K.S.A. 41-2622.

"11. On July 12, 1995, the Sedgwick County District Court in *City of Wichita, Kansas v. Ariel Martinez Gonzalas*, 95 MC 54 (1995), ruled that the City Resolution of December 22, 1987 which created a fee schedule in excess of $250.00 was null and void in so far as it authorized the assessment and collection of liquor licenses in excess of $250.00.

"12. Following the Sedgwick County District Court decision in *City of Wichita, Kansas v. Ariel Martinez Gonzalas*, supra, the City appealed the decision to the Kansas Supreme Court which dismissed the appeal because the issue presented was not of state-wide interest.

"13. Thereafter, on November 28, 1995, the City Council passed Resolution R-95-549 which set the schedule for city license fees at $250.00. The Agenda Report and the Minutes of the City Council Meeting state that after the adoption of Charter Ordinance No. 105 and the enacting Resolution on December 22, 1987, state law was changed as to cities such as Wichita which were charging more than the statutory amount set forth in K.S.A. 41-2622 for local license fees. Resolution R-95-549 was adopted in response to Judge David Kennedy's ruling in *City of Wichita, Kansas v. Ariel Martinez Gonzalas*, 95 MC 54.

"14. Between July 1, 1988 and November 28, 1995, Defendant stated on the License Application forms prepared by Defendant the amount of the license fee required to be paid in order to obtain a city liquor license.

"15. Neither the Defendant nor any Plaintiff or class member knew prior to November 28, 1995, that the 1988 amendment to the state law had rescinded by operation of law the Charter Ordinance No. 105 and the enacting Resolution.

"16. Defendant's continuing acts of charging and collecting license fees in amounts in excess of the maximum amount set forth in K.S.A. 41-2622(b) between

July 1, 1988 and November 28, 1995, was based upon Defendant's mistaken belief that Charter Ordinance No. 105 and the enacting Resolution had not been rescinded by the 1988 amendment to state law.

"17. Plaintiffs and members of the class continued to pay the license fee amounts required by Defendant between July 1, 1988 and November 28, 1995, under the mistaken belief that Charter Ordinance No. 105 and the enacting Resolution remained in effect and thus, they were performing a duty to the Defendant.

"18. In addition to passing Resolution R-95-549, the City refunded a portion of fees collected in excess of $250.00 to some private clubs and drinking establishments."

The City raises six issues on appeal:

1. Was the City's licensing ordinance a valid exercise of its home rule authority?

2. Were Licensees' claims barred by the volunteer rule?

3. Were Licensees' claims barred by the statute of limitations?

4. Was the class certification appropriate?

5. Were Licensees entitled to prejudgment interest?

6. Should the attorney fees be based upon the amount of the judgment rather than the amount refunded to class members?

The City first argues that the adoption of Charter Ordinance No. 105, and the subsequent resolution establishing licensing fees in excess of those contained in K.S.A. 41-2622, was a valid exercise of the City's home rule authority.

On appeal, the City states that no factual issues exist with regard to the question of home rule authority so that the issue was appropriate for summary judgment. It should be noted that the City does dispute the second sentence of the trial court's finding of fact No. 9-"By operation of law, the amendment rescinded Charter Ordinance No. 105 and the enacting Resolution of December 22, 1987 insofar as they conflicted with it." This "finding," however, actually is a conclusion of law. The City contends that the district court entered summary judgment for the wrong party as a matter of law.

The undisputed facts relevant to the question of the City's home rule authority may be briefly stated: Licensees were required to obtain a liquor license from the City and pay a license fee in order to do business. By Charter Ordinance No. 105 and accompanying resolution, which became effective in December 1987, the City

exempted itself from the fee limitations in K.S.A. 41-2622, a section of the Club and Drinking Establishment Act, K.S.A. 41-2601 *et seq.*, (Act) and set fees exceeding the statutory maximums. On July 1, 1988, amendments to K.S.A. 41-2622 went into effect. The trial court was of the opinion and the parties agree that the post-amendment statute is uniformly applicable.

In July 1995, a Sedgwick County District Court held that the City's charter ordinance fee schedule was null and void. On November 28, 1995, the City, in response to the district court's holding, passed Resolution R-95-549, which set its liquor license fees at $250, in accordance with the statutory limit.

From July 1, 1988, until November 28, 1995, Licensees paid annual liquor license fees that exceeded the $250 maximum set forth in K.S.A. 41-2622(b).

The district court reached the following conclusions of law on the question of the City's authority to charge liquor license fees in excess of those set forth in K.S.A. 41-2622:

"1. The 1988 amendment to K.S.A. 41-2622 rendered the Club and Drinking Establishment Act uniform as to all counties and cities within Kansas.

"2. K.S.A. 41-2622(c) as it presently reads is uniformly applicable to all municipalities and counties and since the Club and Drinking Establishment Act is uniform, a city may not enact a conflicting charter ordinance.

"3. A city ordinance cannot stand if it is in 'actual conflict' with a state statute that is uniformly applicable to all cities or counties.

"4. Following the 1988 amendment to K.S.A. 41-2622 of the Club and Drinking Establishment Act, Charter Ordinance No. 105 and the enacting Resolution adopted on December 22, 1987, came in 'actual conflict' with the $250.00 limitation set forth in K.S.A. 41-2622(c).

"5. Home rule legislation is prohibited in a field of law in which there is a state statute uniformly applicable to all cities or counties. A city or county may not exercise home rule to opt out of a uniform law by charter ordinance; the local ordinance may be contrary to, or in conflict with, a state law only where such state law has a non-uniform application throughout the state.

"6. A city's home rule power to adopt charter ordinances is limited where state law applies uniformly to all cities of the same class, limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction.

"7. The fact that a city or county may have the option to allow liquor by the drink within their jurisdictions does not make the Club and Drinking Establishment Act non-uniform. The Act is uniformly applicable to all cities which elect to come under the Act.

"8. The prohibitions or limitations on maximum city license taxes or fees upon clubs and drinking establishments in K.S.A. 41-2622 (b) and (c) are not subject to a city's home rule or charter ordinance powers pursuant to Article 12, Section 5, of the Kansas Constitution.

"9. Pursuant to K.S.A. 41-2631 any city ordinance which conflicts with the Club and Drinking Establishment Act is null and void.

"10. K.S.A. 41-2631 expresses a specific legislative intent to make the 1988 amendment to K.S.A. 41-2622 (b) and (c) applicable to any pre-existing city ordinance to the contrary, and a further legislative intent that such pre-existing ordinance to the contrary is rescinded by operation of law.

"11. The City Resolution of December 22, 1987, creating a fee schedule in excess of $250.00 is rescinded pursuant to K.S.A. 41-2631 in so far as it authorizes the assessment and collection of liquor license fees in excess of $250.00."

In summary, the trial court was of the opinion that the 1988 amendments to K.S.A. 41-2622 rendered the Act uniformly applicable to all cities. The trial court expressly rejected the City's contention that the liquor-by-the-drink options available to counties under the Act prevented the Act from becoming uniformly applicable with the 1988 amendments to K.S.A. 41-2622. Because the fee schedule established by the City's Charter Ordinance No. 105 was inconsistent with the Act, as amended in 1988, the trial court held the City's charter ordinance was null and void. Moreover, the trial court reasoned the City's charter ordinance was expressly nullified by K.S.A. 41-2631.

The City first argues that the Act was not uniform in 1987 when the City's charter ordinance became effective. The City's position does not differ from that of the trial judge. It is implicit in the trial court's conclusion that the 1988 amendments to K.S.A. 41-2622 *rendered* the Act uniformly applicable that the Act was nonuniformly applicable until amended in 1988.

Where the City takes issue with the trial court's decision is in the effect of the 1988 legislative amendments to K.S.A. 41-2622. The City contends that legislative amendments to a portion of an enactment, such as the 1988 amendment of K.S.A. 41-2622, are not effective to repeal a charter ordinance under Art. 12, § 5(c)(4). Moreover, according to the City, the 1988 amendment of K.S.A. 41-2622 did not render the Act uniformly applicable because K.S.A. 41-2642 and 41-2643 allow counties to determine whether

and what kind of drinking establishments will be permitted therein. The City also urges the court to adopt its view that some legislation proposed but not passed in 1999 is evidence that the Act is non-uniformly applicable. With regard to K.S.A. 41-2631, the City's position is that the legislature cannot preempt the home rule power of cities by passage of a simple statute.

The issues are matters of law that involve interpretation of statutory and constitutional provisions. There are no disputes as to material facts relevant to the home rule questions. This court's review is unlimited.

In 1988 the legislature amended K.S.A. 1987 Supp. 41-2622 by deleting the second subpart of subsection (b):

"(b) In addition to the fee provided by subsection (a):(1), any city where the licensed premises of a club or drinking establishment are located or, if such licensed premises are not located in a city, the board of county commissioners of the county where the licensed premises are located shall *may* levy and collect an annual occupation or license tax from the licensee in an amount equal to not less than $100 nor more than $250, or

(2) in any county having a population of more than 160,000 and not more than 185,000 and in any county in which there are located the premises of not less than 75 clubs and drinking establishments, any city located within the county in which any such licensed premises are located or, if such licensed premises are not located within a city, the board of county commissioners of such county may levy and collect an annual occupation or license tax from the licensees in an amount not to exceed $250." L. 1988, ch. 165, § 5.

It is the deletion of the second paragraph of subsection (b) that, in the trial court's view, rendered the Act uniformly applicable. Art. 12, § 5(c)(4) provides: "Each charter ordinance . . . may be repealed . . . by enactments of the legislature applicable to all cities." The City's position is that an amendment to existing legislation is not an "enactment" within the meaning of Art. 12, § 5(c)(4). In the City's view, only passage of all new statutes that comprise an act would constitute an enactment within the meaning of the constitutional provision. Applying this *theory* to the circumstances at hand would yield the following results: The legislature could have repealed Charter Ordinance No. 105 by passing a new act consisting of the amended version of K.S.A. 41-2622 and a restatement of the other, unchanged statutes that make up the Act. The legis-

lature failed to repeal Charter Ordinance No. 105 because in enacting amendments to K.S.A. 41-2622 it failed to restate the other, unchanged statutes that make up the Act. In *practice*, the re-enactment of unchanged statutes, which the City posits, would not occur. The 1988 amendments to K.S.A. 1987 Supp. 41-2622 typify the legislature's customary method of enacting amendments. The amendments to K.S.A. 41-2622 are set out in Section 5 of Chapter 165, which was Senate Bill No. 598. Other sections of Chapter 165 are amendments to other acts. The title of the bill declares its subject, describes its contents, and, for the purpose of this discussion, illustrates the typical method of amending statutes:

"AN ACT concerning alcoholic beverages; relating to fees for certain licenses; concerning farm wineries; relating to certain prohibited acts with regard to persons under 21 years of age and penalties therefor; amending K.S.A. 21-3610 and K.S.A. 1987 Supp. 21-3610a, 41-308a, 41-310, 41-719, 41-727, 41-2622 and 41-2702 and repealing the existing sections; also repealing K.S.A. 1987 Supp. 41-2721." L. 1988, ch. 165.

The legislature's practice conforms to the state constitutional provision requiring that *revival* of a law be accomplished by the new act containing the entire revived act but permitting *amendments* to be made section by section. Art. 2, § 16.

The case law cited by the City for the proposition that only an all-new act can repeal a charter ordinance adds no support. Those cases pre-date the Home Rule Amendment. None lends support to the notion that the legislature's amending a statute without re-enacting all the statutes in the act prevents the amendment from being an enactment for the purpose of cities' home rule analysis.

Although stating that this is an issue of first impression, the City cites *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City,* 264 Kan. 293, 955 P.2d 1136 (1998), as if that case settled the proposition that the 1988 amendments to K.S.A. 41-2622 would not invalidate Charter Ordinance 105. Because the legislation was not applicable to all cities, there was no doubt that it did not repeal the charter ordinances. 264 Kan. at 329. *State ex rel. Tomasic* lends no support to the City's argument that amendments to existing legislation do not constitute enactments of the legislature as expressed in the constitutional provision.

The City's construction of Art. 12, § 5(c)(4) as not permitting repeal of a charter ordinance by legislative amendment of existing legislation lacks practicable application and case law support. Thus, we find no merit in the City's argument.

The City's other argument against repeal of its charter ordinance is that the nonuniform applicability of K.S.A. 41-2642 and K.S.A. 41-2643 of the Act was not affected by the 1988 amendments to K.S.A. 41-2622.

The county-by-county election provided by K.S.A. 41-2642 and K.S.A. 41-2643 results in cities being treated differently from one another under the Act depending on location within or without a county that has elected to allow the sale and service of liquor by the drink. Hence, according to the City, the Act is not uniformly applicable.

The basic scheme of cities' home rule was outlined in *Kansas City Renaissance Festival Corp. v. City of Bonner Springs*, 269 Kan. 670, 673, 8 P.3d 701(2000):

"In 1961, the home rule amendment to the Kansas Constitution took effect and empowered cities to determine their local affairs. Kan. Const. art. 12, § 5(b). The legislature retains power over statewide matters. Hence, home rule power does not authorize cities to act where the state legislature has precluded municipal action by clearly preempting the field with a uniformly applicable enactment. Generally speaking, where the legislature has not preempted the field with a uniformly applicable enactment, cities may exercise their home rule power by one of two means. Where there is a nonuniform legislative enactment that is in conflict with the action a city wants to take, a charter ordinance may be used to exempt the city from the legislative enactment. Kan. Const. art. 12, § 5(c). Where there is no legislative enactment in conflict with the local action, an ordinary ordinance will suffice."

Home rule became effective July 1, 1961, and this court first construed and applied the provisions of Kan. Const. art. 12, § 5(c) in *Claflin v. Walsh*, 212 Kan. 1, 509 P.2d 1130 (1973). In *Claflin*, we noted that prior to adopting home rule the cities were severely limited in their power to control local matters. Home rule abolished the "Dillon Rule" under which cities were considered creatures of the legislature and could only exercise that authority conferred by statute. See Clark, *State Control of Local Government in Kansas: Special Legislation and Home Rule*, 20 Kan. L. Rev. 631

(1972). After July 1, 1961, cities were no longer dependent upon the legislature for authority to determine local affairs. As noted in *Claflin*, home rule is not without limitation. Essentially, the cities and state have concurrent concerns and authority as to local affairs. Where the legislature is silent as to a local matter, a city may address it by enacting an ordinary ordinance. A city may legislate on the same subject providing the city ordinance does not conflict with a state statute. If there is a conflict, the city can opt out of the statute by enacting a charter ordinance. However, where a statute applies uniformly to all cities, the city cannot opt out by charter ordinance, and such ordinance is void.

The legislature has always been able to preclude city action by preemption. The intent to reserve exclusive jurisdiction for the State to regulate in an area cannot be implied but must be clearly manifested by state law. *City of Junction City v. Griffin*, 227 Kan 332, 607 P.2d 459 (1980). In *Griffin*, this court noted the impact home rule had on State preemption:

"The grant of home rule power to cities under Article 12, § 5 of the Kansas Constitution has therefore added a new dimension to be considered in determining whether the legislature has occupied a field. Legislative intent to preempt a field is alone insufficient. It is now necessary to examine the provisions of the State enactment to determine whether the constitutional standard of uniform application to cities has been met. If not uniform, legislative intent as expressed within the enactment will not overcome the constitutional requirement for uniform application. *Clark v. City of Overland Park*, 226 Kan. 609, 602 P.2d 1292 (1979). The legislature may preempt the constitutional powers of cities only in the manner prescribed in the constitution. 'As between the will of the people expressed in the constitution, and that expressed in the statute, the former always prevails.' *State, ex rel. Goodin v. Thoman*, 10 Kan. 191, 197 (1872)." 227 Kan. at 336.

Following the adoption of home rule, the legislature can preempt the field either by enacting a uniformly applicable statute or by stating in the statute that the power to regulate is vested exclusively in the state, and any ordinance in conflict with or contrary to the statute shall be null and void. Here, we are concerned with the former and not the latter.

The City relies on *Home Builders Ass'n v. City of Overland Park*, 22 Kan. App. 2d 649, 921 P.2d 234, *rev. denied* 260 Kan. 993

(1996). *Home Builders* was an appeal by the city from the trial court's entry of partial summary judgment invalidating municipal ordinances that levied excise tax on platting. The Court of Appeals reversed. At issue was whether the 1992 amendment to K.S.A. 12-187 made it nonuniform, which rendered the local retailers' enactment subject to the charter ordinance home rule authority of the city.

K.S.A. 1995 Supp. 12-187(a)(2) was added by the legislature in 1992. L.1992, ch. 279, § 1, provides:

> "*The governing body of any city located in any county which does not impose a countywide retailers' sales tax pursuant to paragraph (5) of subsection (b) may submit the question of imposing a retailers' sales tax at the rate of .25%, .5%, .75% or 1% and pledging the revenue received therefrom for the purpose of financing the provision of health care services, as enumerated in the question, to the electors at an election called and held thereon. The tax imposed pursuant to this paragraph shall be deemed to be in addition to the rate limitations prescribed in K.S.A. 12-189, and amendments thereto.* As used in this paragraph, health care services shall include but not be limited to the following: Local health departments, city, county or district hospitals, city or county nursing homes, preventive health care services including immunizations, prenatal care and the postponement of entry into nursing homes by home health care services, mental health services, indigent health care, physician or health care worker recruitment, health education, emergency medical services, rural health clinics, integration of health care services, home health services and rural health networks." (Emphasis added.)

Other statutes in the enactment established four classes of cities for tax purposes, K.S.A. 1995 Supp. 12-188, and prescribed the retailers' sales tax rates applicable to each class of cities, K.S.A. 1995 Supp. 12-189.

Reading the statutes together, the Court of Appeals concluded that the enactment was not uniformly applicable, thus permitting the cities to act:

> "As the City and the League point out, K.S.A. 1995 Supp. 12-187(a)(2) has the effect of treating cities within the four classes of K.S.A. 1995 Supp. 12-188 non-uniformly depending upon whether the county in which a particular city sits has enacted the retailers' sales tax in K.S.A. 1995 Supp. 12-187(b)(5). Take, for instance, a class B City under K.S.A. 1995 Supp. 12-188. According to K.S.A. 1995 Supp. 12-189, 'the rate of any class B city retailers' sales tax shall be fixed in the amount of .25%, .5%, .75%, 1%, 1.25%, 1.5%, 1.75% or 2%.' However, class B cities sitting in a county which has not enacted a countywide retailers' sales tax

pursuant to K.S.A. 1995 Supp. 12-188(b)(5) may submit the question of an additional retailers' sales tax to their electors. K.S.A. 1995 Supp. 12-187(a)(2). Thus, it appears the legislature, pursuant to the 1992 amendment to K.S.A. 12-187(a), is treating cities of the same class within the local retailers' sales tax enactment nonuniformly. By treating cities within the same class nonuniformly, the legislature has opened up the local retailers' sales tax enactment to home rule authority." 22 Kan. App. 2d at 668.

Licensees direct the court's attention to principles set out in *Moore v. City of Lawrence*, 232 Kan. 353, 654 P.2d 445 (1982). *Moore* was an appeal by the city from a declaratory judgment. The trial court found that certain sections of the city code were invalid because they conflicted with K.S.A. 12-705b, which was part of a uniformly applicable enactment pertaining to city planning and subdivision regulations. 232 Kan. at 354. This court agreed. Application of the enactment to any city was optional, which gave rise to the principal question:

"It is clear that initially these statutes are not uniformly applicable to all cities as they provide an optional procedure which may be adopted by any city as a means of governing matters pertaining to city planning and subdivision regulations. However, after careful examination of these provisions we are convinced the legislature intended these statutes to be uniformly applicable to those cities which elected to adopt the planning commission procedure provided by 12-701 *et seq*. While the application of the statutes may be optional, it is clear that once a city chooses to adopt this method the legislature intended for those statutes controlling the planning commission procedure to be binding. These statutes are lengthy and detailed, explicitly delineating the respective powers and duties of the planning commission and governing body of the city. A comprehensive scheme for the adoption of subdivision regulations and approval of subdivision plats is further provided. If each city which elected to create a planning commission under the provisions of 12-701 *et seq.*, were allowed, by way of charter ordinance, to determine which of the provisions were not applicable to that city, the purpose and effect of the statute, to provide a comprehensive method for the governance of city planning and subdivision regulation, would be seriously impaired. We do not think such a result was intended by the legislature and therefore hold these statutes are uniformly applicable to all cities which elect to follow the procedure set forth therein." 232 Kan. at 356-57.

*Moore* teaches that the legislature's giving *cities* the option to adopt the provisions of an enactment does not cause the enactment to be nonuniformly applicable for the purpose of *cities'* home rule analysis. The City would have the court view *Home Builders* as

standing for the proposition that the legislature's giving *counties* the option to adopt the provisions of an enactment causes the enactment to be nonuniformly applicable for the purpose of *cities'* home rule analysis. As we have seen, however, the basis for the *Home Builders* decision was the legislature's imposing different rate limitations on cities of the same class. The differential rate limitations rather than the county option made the enactment nonuniformly applicable for the purpose of cities' home rule analysis.

Generally K.S.A. 41-2642 and K.S.A. 41-2643 state respectively what licenses for drinking establishments and caterers permit with regard to selling and serving alcoholic liquor by the drink. Permitted activities are confined to counties that have elected to allow sales and service of liquor by the drink pursuant to K.S.A. 41-2646, but neither 41-2642 nor 41-2643 authorize differential treatment of cities located within and without counties that opt for liquor by the drink that is comparable to the differential sales tax rates in *Home Builders*.

We conclude that *Moore* is controlling. In *Moore*, the court rejected the idea that an enactment's containing an election was evidence that the legislature did not intend for it to be uniformly applicable for home rule analysis. No persuasive argument has been made why that principle should not apply in the circumstances of the present case. In *Moore*, the court held that the statutes in question were "uniformly applicable to all cities which elect to follow the procedure set forth therein." 232 Kan. at 357. In the present case, application of the *Moore* principle would produce the holding that the Act is uniformly applicable to all cities within counties that elect to allow alcoholic liquor to be sold and served by the drink. *Home Builders* does not affect the principle because in this Act the legislature created an option but no differential treatment based on exercise of the option. As in *Moore*, the legislative intent is clear, and to allow counties, who elect to adopt the provisions of the enactment, to then opt out by charter ordinance defeats the intent and purpose of the legislature.

Finally, the City would have the court give great weight to Senate Bill No. 16, which was proposed during the 1999 legislative session but never passed. According to the City, the proposed legislation

would have been unnecessary if the 1988 amendments to K.S.A. 41-2622 had rendered the Act uniformly applicable. If Senate Bill No. 16 had been enacted, the City's argument might be worthy of consideration. As it is, the argument is devoid of merit for the simple reason that the legislature's failure to pass the measure may have been because the uniform applicability of K.S.A. 41-2622 made the new legislation unnecessary.

We hold that the provisions of the Club and Drinking Establishment Act, K.S.A. 41-2601 *et seq.*, are uniformly applicable to all cities in counties which elect to come under the Act. Thus, the Act is applicable uniformly to all cities within the meaning of Article 12, § 5 of the Kansas Constitution.

The City next contends that this court's recent decision on the volunteer rule, *Regency Park v. City of Topeka*, 267 Kan. 465, 981 P.2d 256 (1999), requires reversal of the trial court's entry of summary judgment in favor of Licensees. The rule invoked by the City was stated as follows:

"One who pays a tax voluntarily, that is, without compulsion or duress, has no valid claim for its repayment. This is what is known as the 'volunteer rule,' which provides that a party who, without mistake, fraud, or duress, voluntarily pays money on a demand which is not enforceable against the party, cannot recover the amounts paid." 267 Kan. 465, Syl. ¶ 2.

In *Regency Park*, the court "passed up the opportunity" to distinguish taxes and fees for the purpose of the volunteer rule. 267 Kan. at 472.

The trial court's four findings of fact that are particularly relevant to this issue are numbers 14 through 17, which have previously been set out in this opinion. On the basis of those findings of fact, the trial court drew the following conclusions of law:

"12. The City's assessment and collection of liquor license fees in excess of $250.00 between July 1, 1988, and November 28, 1995, and the licensees' payment of said amounts were based upon a mutual mistake of fact, i.e. a mutual belief that the non-uniform state law continued to exist and thus the Charter Ordinance No. 105 and the enacting Resolution of December 22, 1987 which by operation of law had been rescinded, also continued to exist.

"13. The City set forth in writing on the License Application forms which it supplied the amount which it was charging for each category of license. Said

written statement was a representation by the City that the fees being charged were lawful. This representation was incorrect and misleading.

"14. The license fees paid by Plaintiffs and the class members were involuntary and made under duress in that no club or drinking establishment could do business or continue to do business in Wichita unless it purchased a city license under the terms dictated by the City.

"15. The excess fees charged by the City are recoverable by the Plaintiffs and class members inasmuch as said excess fees were charged and collected under circumstances arising out of a mutual mistake of fact by the parties. Further, said funds were collected by the City based upon continuous representations by the City that said charges were lawful. Still further, said funds were collected under threat that failure to pay the amount demanded would result in the loss of the right to do business or to continue to do business in Wichita."

*Regency Park* involved a stormwater fee ordinance that had been declared invalid in one district court case shortly before the petitions were filed in the cases consolidated for the appeal to this court. The ordinance was invalidated in the earlier case, not because the city lacked the power to pass it, but rather because the city exercised its power in an unauthorized manner. The court stated: "The ordinance in issue that was held invalid in [the earlier case] was clearly for a valid public purpose and its invalidity was not based on any reason making it void from its inception." 267 Kan. at 472. Thus, the city's action in passing the ordinance was voidable rather than void. 267 Kan. at 473. It was on the principal ground that the city's stormwater fee collection was voidable rather than void until judicially declared invalid that this court affirmed the trial court's decision that plaintiffs were not entitled to refunds. This court affirmed "the trial court based on our holding that the ordinance in issue was only voidable and was in full force and effect until declared to be invalid, thereby prohibiting any refund of the toll, rent, fee, or charge paid." 267 Kan. at 473. The court also stated its belief that "the trial court properly granted judgment to the City based on a correct application of the volunteer rule." 267 Kan. at 473.

We concluded in the present case that the City did not have authority to continue charging more than the statutory liquor license fees after the amendments to K.S.A. 41-2622 became effective on July 1, 1988, and thus this case presents the other side of

the *Regency Park* coin. The City's charter ordinance would have been void rather than voidable and the City would have been collecting fees during the entire period for which Licensees seek refunds—from July 1, 1988, through November 28, 1995—pursuant to an ordinance that was neither valid nor binding. Thus, the *Regency Park* reasoning would not preclude refund of the liquor license fees collected under a void ordinance. Licensees cite *Salthouse v. McPherson County*, 115 Kan. 668, 224 Pac. 70 (1924), for the proposition that the volunteer rule has no application where the exaction was made without valid authority. In that case, the court stated: "The statute under which the tax was collected has been held to be unconstitutional, being an attempt by the state to tax property which is by the federal law exempt. [Citation omitted.] The plaintiff was entitled to a return of his money unless his recovery was prevented by purely procedural considerations." 115 Kan. at 669. After examining the various procedural considerations, the court affirmed the trial court's judgment in favor of Salthouse. We note, however, that Salthouse made the tax payment under protest, and for that reason the payment was not voluntary. 115 Kan. at 672.

Licensees direct the court's attention to cases from other states' courts holding that a license fee paid in order to do business is made under duress and, thus, involuntary so as to remove it from operation of the volunteer rule. They rely particularly on *Five Boro Elec. Assn. v. City of N.Y.*, 12 N.Y.2d 146, 237 N.Y.S.2d 315, 187 N.E.2d 774 (1962), in which several hundred electricians were permitted to recover excess license fees that had been paid without protest. In an earlier case, the license fees for electricians had been held to be so excessive as to be unconstitutional. Licensees also single out the case of *State ex rel. S. S. Kresge Co. v. Howard*, 357 Mo. 302, 208 S.W.2d 247 (1947), in which the Missouri court stated:

"The refund of taxes illegally exacted is ordinarily a matter of governmental grace. On grounds of public policy, the law discourages suits for the refund of taxes illegally levied and collected, and has imposed many restrictions on their recovery. It is generally held that taxes voluntarily paid without compulsion, although levied

under an unconstitutional statute, cannot be refunded without the aid of a statutory remedy. [Citation omitted.]

"But here we have no general statute authorizing the refund of a domestication tax illegally exacted. Nevertheless, under the common law if the payment of a tax is deemed involuntary, a tax which is unlawfully collected may be recovered back by appropriate action. [Citation omitted.] Here we have a tax which was unlawfully collected under the express ruling of [an earlier case]. So the only question as to the common law right of relator to a refund is whether the payment of the tax was voluntary or involuntary.

"The tax was not paid under protest. Even so, that fact does not determine whether it was paid voluntarily or involuntarily and has little or no weight on the question. [Citations omitted.]

"In [an earlier case], we followed the prevailing rule that a voluntary payment of a tax made under a mistake of law but with a full knowledge of all the facts cannot be recovered. However, courts are now taking a more liberal view as to whether certain types of taxes are ever in fact voluntarily paid since the urgent and immediate payment of them is compelled in order to avoid the harsh penalties imposed for non-payment. The compulsion brought about by such penalties creates what the writers have termed technical or implied duress sufficient to make the payment of such taxes involuntary. We adopted the modern view of greater liberality in recognizing such duress in tax payments in *Brink v. Kansas City*, 355 Mo. 860, 198 S.W.2d 710, where we declined to follow the stricter view of some of our earlier decisions.

"And even more to the point in this case this court has held that the payment of a tax in order to avoid the forfeiture of the payor's right to continue in business 'constituted such duress as would render the payment of the tax involuntary.' [Citations omitted.] . . .

"In the instant case relator was faced with the forfeiture of its right to continue business here, and with other penalties, unless it paid the domestication tax. We hold that under these circumstances it was an involuntary payment. Being an involuntary payment of an illegal tax relator has a lawful right to have it refunded by the State." 357 Mo. at 307-08.

We find persuasive the reasoning of the Missouri and New York courts and accordingly conclude that a business faced with the forfeiture of its right to continue business unless it paid the fee does not pay it voluntarily. Here, the payments were involuntarily exacted pursuant to an enactment that was invalid and without effect. Thus, Licensees are entitled to a refund.

The City next argues that the Licensees' claims were barred by the statute of limitations. The trial court concluded that K.S.A. 60-512 is the applicable statute of limitations "for recovery of the

excess funds charged and collected by the City." K.S.A. 60-512 provides: "The following actions shall be brought within three (3) years: (1) All actions upon contracts, obligations or liabilities expressed or implied but not in writing. (2) An action upon a liability created by a statute other than a penalty or forfeiture."

The City contends that the applicable statute of limitations is K.S.A. 60-513(a)(2) or (4). Either subsection requires an action to be brought within 2, rather than 3, years. Subsection (a)(2) governs actions for "taking, detaining or injuring personal property, including actions for the specific recovery thereof." K.S.A. 2000 Supp. 60-513(a)(2). Subsection (a)(4) pertains to actions for "injury to the rights of another." K.S.A. 2000 Supp. 60-513(a)(4). The City's principal argument as to why K.S.A. 60-513 applies is that Licensees themselves categorized their action as sounding in tort by the allegations of their petition and by filing a claim for damages with the City. Contrary to the City's contention, Licensees alleged in their petition that the City unlawfully charged and collected fees exceeding the statutory cap and that the City's retention of the fees constitutes an unjust enrichment. They sought "a refund from Defendant in restitution of all license fee amounts in excess of $250.00." Nor is the City's contention with regard to the notice of claims persuasive. The notice does not seem to be in the record. The city attorney's written response, however, is in the record, and it confirms that the Licensees notified the City of claims for refunds: "We have carefully reviewed the Claim for Damages that you filed with the City on behalf of certain clubs and drinking establishments seeking refunds of a portion of the licensing fees that these businesses have paid the City over the past nine years." The City seems to imply that a written claim for damages is synonymous with a claim for damages under the Kansas Tort Claims Act, but there is no merit in the suggestion. Licensees' written notice to the City was given pursuant to K.S.A. 2000 Supp. 12-105b(a), which sets forth a uniform procedure for payment of claims of all kinds. It provides: "All claims against a municipality must be presented in writing with a full account of the items, and no claim shall be allowed except in accordance with the provisions of this section. A claim may be the usual statement of account of

the vendor or party rendering a service or other written statement showing the required information."

Licensees alleged that the fee-schedule ordinance was an invalid attempt by the City to exercise home rule, and they sought refunds of the overpayments made pursuant to the invalid ordinance. In a phrase used by this court in *Regency Park*, 267 Kan. at 476, the present case is "an action to recover money illegally exacted."

In *State, ex rel., v. Masterson*, 221 Kan. 540, 561 P.2d 796 (1977), the action was brought by a county against the county treasurer and surety on his bond to recover money misappropriated by the treasurer. It was an action to recover from the surety money illegally taken by the county officer. In the trial court, the parties stipulated that the only issue was whether K.S.A. 60-512 or 60-513 was the appropriate statute of limitations. They further stipulated as to the years for which the surety would owe depending on which statute applied. 221 Kan. at 542. The district court determined that K.S.A. 60-512(2) was the appropriate statute of limitations.

The present case is not about injury to persons or property, as the City insists. It is an action to recover fees illegally charged and collected. It is an action in the same general category with *Masterson*, and, as the court determined in that case, the applicable statute of limitations seems to be K.S.A. 60-512. The trial court in this case determined that K.S.A. 60-512 applies, and we agree.

The next question is when does the statute of limitations begin to run? Certain of the trial court's findings of fact relevant to the issue of the statute of limitations are seriously disputed. Those are trial court's findings of fact Nos. 11 through 17, previously set out in this opinion.

The district court concluded that the limitations period did not begin to run until November 28, 1995. The trial court's factual ground for its conclusion was that Licensees did not know until November 28, 1995, that the liquor license fees charged by the City exceeded the statutory cap. We find no evidence in the record to support the factual finding.

Licensees alleged in their petition: "Neither the Defendant nor Plaintiffs were aware that state law had changed as to cities charging more than $250.00 for local liquor license fees." The City de-

nied the allegation. In ¶ 23 of the Statement of Uncontroverted Facts in their summary judgment motion, Licensees asserted: "There is no evidence that the Defendant, any Plaintiff, or any class members knew of any change in state law which would preclude Defendant from opting out of the provisions of K.S.A. 41-2622 under home rule prior to November 28, 1995." In its response to Licensees' Statement of Uncontroverted Facts, the City controverted Licensees' ¶ 23. Examination of the sources cited by Licensees for ¶ 23 reveals no support in them for the trial court's finding that Licensees did not know until November 28, 1995, that the City's liquor license fees exceeded the statutory maximum. If this were the end of the inquiry, there would be no question that the trial court's entry of summary judgment on the limitations issue would be erroneous.

The district court also concluded that the City was equitably estopped from asserting the statute of limitations as a defense. The district court, as an equitable measure, seems to have inferred Licensees' ignorance and/or to have deemed them to be ignorant of the state law fee cap and the City's exceeding it.

(a) *Presumed to know the law.* The City, too, would have this court decide the question when the limitations period began to run without regard to Licensees' actual discovery of the illegality of fees over $250. The City's position, however, is that discovery is entirely irrelevant so that the district court erred in deeming or drawing the inference that Licensees did not discover illegality of the fees until November 28, 1995. The City sums up its argument against drawing an inference of Licensees' ignorance with the adage that Licensees were presumed to know the law. Thus, according to the City's argument, the limitations period for claims for fees paid on January 1, 1988, began on payment day and expired 2 years later (3 years later, according to the City's theory). The obvious problem in trying to fit the presumption of knowing the law into our circumstances is that it creates a Catch-22 for Licensees, who paid the illegal fees in accordance with the City's charter ordinance, which Licensees also could presume to be the law.

(b) *Facts relevant to equitable estoppel.* The City strongly objects to several of the trial court's conclusions relating to estoppel. The trial court stated:

"13. The City set forth in writing on the License Application forms which it supplied, the amount which it was charging for each category of license. Said written statement was a representation by the City that the fees being charged were lawful. This representation was incorrect and misleading.

"14. The license fees paid by Plaintiffs and the class members were involuntary and made under duress in that no club or drinking establishment could do business or continue to do business in Wichita unless it purchased a city license under the terms dictated by the City.

"15. The excess fees charged by the City are recoverable by the Plaintiffs and class members inasmuch as said excess fees were charged and collected under circumstances arising out of a mutual mistake of fact by the parties. Further, said funds were collected by the City based upon continuous representations by the City that said charges were lawful. Still further, said funds were collected under threat that failure to pay the amount demanded would result in the loss of the right to do business or to continue to do business in Wichita.

. . . .

"17. Additionally, the City's continuing representation to the licensees that the fees which it charged for a city license were lawful coupled with the City's collection of said amounts from the licensees through duress, equitably estop the City from asserting the statute of limitations as a defense."

The City argues that the record lacks evidence to support the conclusions. The City points out, for example, that the record does not contain a license application form. The City, however, did not expressly challenge the trial' court's finding that the City's liquor license application forms stated "the amount of the license fee required to be paid in order to obtain a city liquor license." The finding is supported by several items in the record. The record includes Charter Ordinance No. 105, which required in § 3 that applications for liquor licenses be made on "forms prescribed and furnished by the City Treasurer's Office." And the record contains the following answer given by the City to one of Licensees' interrogatories: "The City made no representations to the Plaintiffs on the licensing forms as to whether the fees charged complied with state law. The licenses [*sic*] only advised the Plaintiffs as to the amounts required to be paid to obtain a license within the City of ·Wichita."

(c) *Mistake*. The district court's view of this case was that neither the Licensees nor the City knew that the fees were unlawful. Excess fees were paid by the Licensees to their detriment and the

City's advantage. The City assessed and collected the excess fees so that it should be charged with responsibility for its role in exacting the excess fees. Thus, according to the district court, the parties were acting under a mutual mistake of fact. The City, quite understandably, has not challenged the district court's finding that it was unaware that the fees it charged exceeded the statutory maximum. As we have seen and previously discussed, the City does challenge the district court's finding that the Licensees were ignorant and that challenge is meritorious due to lack of evidence rather than contrary evidence.

Licensees rely on *Klepper v. Stover*, 193 Kan. 219, 221-22, 392 P.2d 957 (1964), for the principle that "in equity where mistake is sought to be corrected, limitation statutes do not begin to run on the cause of action until the time when the mistake is discovered or when by use of due diligence it ought to have been discovered." Because it has not been established that Licensees did not discover the mistake until November 28, 1995, this equitable principle may not be applied to postpone commencement of the statute's running.

(d) *Misrepresentation and duress.* The district court concluded that the City's stating the amount of a fee amounted to a representation that the amount of the fee was lawful. Another way of expressing what the district court was getting at would be that the Licensees were justified in relying on the City to state the lawful amount of the fee, and their reliance served to bar application of the statute of limitations. Their relying on the City would not be justified, though, if Licensees actually knew that the amount stated by the City exceeded the statutory maximum.

Duress is the other concept on which the trial court's exception to the application of the statute of limitations was based. As previously discussed, we adopted the view that a fee paid in order to do business is not voluntary; however, we do not view such a fee as being paid under duress for the purpose of the statute of limitations application. The district court erred in concluding that the City was estopped from asserting the statute of limitations. Thus, the 3-year limitation applies to the recovery of excess funds charged

and collected by the City and runs from the date of Licensees' payment of the fee.

The City next questions whether the class certification was appropriate.

*Commonality requirement.* K.S.A. 2000 Supp. 60-223(a) and (b) provide:

"(a) *Prerequisites to a class action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) *Class actions maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of members of the class in prosecuting or defending separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the appropriate place for maintaining, and the procedural measures which may be needed in conducting, a class action."

In the present case, the trial court found that each of the elements of subsection (a) were present and that the elements of subsections (b)(1)(A) and (b)(1)(B) and (b)(3) were present as well. The trial court, therefore, ordered that the action would be maintained as a class action. Trial judges are afforded substantial discretion in determining whether a class should be certified. *Steele v. Security Benefit Life Ins. Co.*, 226 Kan. 631, 638, 602 P.2d 1305

(1979). Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999).

The City contends that the district court abused its discretion in finding that there are questions of law or fact common to the class and that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The heart of the City's challenge to the district court's finding the commonality requirement is that the amounts of the claimed refunds will differ among members of the class depending on how many years excess fees were paid and how much the fees exceeded the statutory limit.

It is settled federal law that a district court does not abuse its discretion in certifying a class action even though each plaintiff may have sustained a different amount of damages. See, *e.g.*, *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988). "The Kansas class action statute is patterned after Fed. R. Civ. Proc. 23 and we have traditionally followed the interpretation of federal procedural rules after which our own have been patterned. [Citation omitted.]" 226 Kan. at 636. Particularly in a case such as the present one in which it will take little more than a mathematical computation to determine individual class member's overpayments, there would be no reason for the court to depart from the federal view of the commonality requirement. The record contains a list of the 565 class members along with the amount each paid in excess fees.

*Notice requirement.* The City also complains that certification of the class allowed class members to circumvent the notice requirement of K.S.A. 12-105b. The statute creates a uniform procedure for payment of claims against a municipality. It requires "[a]ll claims against a municipality [to] be presented in writing with a full account of the items," and it further provides that "no claim shall be allowed except in accordance with the provisions of this section." K.S.A. 2000 Supp. 12-105b(a). The position of the City seems to be that failure to satisfy the notice requirement constitutes a bar to recovery.

It appears from what is contained in the record on appeal, there is a response letter from the city attorney to Licensees' attorney

that a claim on behalf of 39 Licensees was presented to the City sometime before January 31, 1997. In a letter dated January 31, 1997, the City denied the claim after "carefully review[ing]the Claim for Damages . . . seeking refunds of a portion of the licensing fees that these businesses have paid the City over the past nine years." The City expressed its disagreement with the basis for the claim that was stated by Licensees:

"First, we believe that an argument can be made that the assessment of fees in excess of $250.00 is a valid exercise of the City's home rule powers and, therefore, not prohibited by the provisions of state law. Second, if some refund is due, it is our strong belief that the statute of limitations would prevent recovery of those amounts paid more than two years ago.

"Finally, the Claim is on behalf of only 39 of such businesses in the City of Wichita. Even if we were inclined to attempt a compromise of the Claim given the uncertainties of litigating these disputed issues, we would want to be certain that any such compromise would finally resolve this matter. Because you do not represent all potential claimants that can't be done."

From this letter, we can ascertain that the notice of claim fully apprised the City of the claims and the legal basis for them. It also is patent from the City's response that the City was well aware that many additional Licensees were in a position to seek refunds of the fee overpayments. The City's position as stated in its brief is: "The legislative intent of K.S.A. 12-105b is to insure that a municipality is made aware of a claim against it and that the municipality has ample time to investigate the claim before being sued on that claim." In these circumstances, we determine that the purpose of the notice requirement was satisfied. We find no abuse of discretion by the trial court in certifying a class action.

The City next argues that the licensees were not entitled to prejudgment interest. The trial court awarded prejudgment interest at the statutory rate of 10% per annum for each Licensee. K.S.A. 2000 Supp. 16-204(e)(3). An attachment to the trial court's final journal entry lists the overpayment, prejudgment interest, and total award for each of the 565 class members. Prejudgment interest awards ranged as high as $12,740. Overpayment refunds and prejudgment interest total $1,889,905.49.

"The allowance of prejudgment interest under K.S.A. 16-201 is a matter of judicial discretion subject to reversal only when there is an abuse of discretion." *Miller v. Botwin*, 258 Kan. 108, Syl. ¶ 4, 899 P.2d 1004 (1995). The City contends that the trial court abused its discretion in several respects.

*Governmental entities.* The City argues that prejudgment interest may not be awarded against a governmental entity. The same argument was considered and rejected by this court in *Shapiro v. Kansas Public Employees Retirement System*, 216 Kan. 353, 532 P.2d 1081 (1975). Years later, the Court of Appeals considered whether subsequent statutory changes had altered the rule. *Edward Kraemer & Sons, Inc. v. City of Overland Park*, 19 Kan. App. 2d 1087, 880 P.2d 789 (1994). The Court of Appeals rejected the argument and stated: "K.S.A. 16-201 authorizes an award of prejudgment interest against a municipality." 19 Kan. App. 2d 1087, Syl. ¶ 3.

*Liquidated claims.* The City further argues that the trial court abused its discretion in awarding prejudgment interest on nonliquidated claims. With regard to when a claim becomes liquidated, the court has stated: "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation." *Miller*, 258 Kan. 108, Syl. ¶ 5. The amounts of Licensees' claims were definitely ascertainable by mathematical computation, as evidenced by the computation results appended to the trial court's final journal entry.

Finally, what was the proper basis on which to compute Licensees' attorney fee award? With regard to the fee for Licensees' attorney, the trial court stated:

"Based upon testimony presented, counsel for Plaintiffs and the class members are entitled to an attorney fee award of fifty percent (50%) of the total judgment entered with interest for all class members set forth on Exhibit 'A' except those entities which are the original plaintiffs listed in the initial caption. Plaintiffs' counsel, based upon their fee agreement with the initial plaintiffs, are entitled to receive twenty-five percent (25%) of the judgment entered for these individuals with interest. The Court finds that said fees are to be paid from the fund collected and are reasonable under the facts and circumstances."

The City does not complain of the percentage established by the trial court for the fee for class members. The City, however, does complain about the amount on which the 50% is calculated.

The trial court set the fee award at 50% of the total judgment. It is the City's contention that the fee award should be 50% of the amount the City actually will pay out to Licensees for overpayment refunds and prejudgment interest.

The City conjectures that many Licensees will not claim their refunds, thus causing the amount paid to be significantly less than the amount of the judgment. In its brief, the City represents that Licensees' counsel "estimated that fifty percent (50%) of the businesses no longer had liquor licenses and were out of business." In fact, examination of the transcript of the hearing on Licensees' motion for class certification reveals that it was the City's attorney, not Licensees' attorney, who "guesstimated" that "40 to 50 percent of these businesses, at least at this point in time, no longer have liquor licenses." The City cites several cases generally for factors to be considered in determining an award of attorney fees in a class action, but the City cites no authority for its position that the fee should be based on amount paid rather than on amount of judgment. The City's argument is based entirely on its speculation that an attorney fee award based on a percentage of the judgment may exceed the amount of the overpayment refunds actually paid out.

On the question of the size of an attorney fee award in a class action lawsuit, the court has stated: "Where established guidelines are followed by the district court in determining the size of the attorney fee to be awarded in a class action, appellate review is limited to abuse of discretion." *Gigot v. Cities Service Oil Co.*, 241 Kan. 304, Syl. ¶ 3, 737 P.2d 18 (1987). The City has not argued that the district court did not follow established guidelines in determining the size of the attorney fee award. Nor has the city shown an abuse of discretion.

In summary, the license fees paid in excess of those provided for in K.S.A. 41-2622 were involuntarily paid, and the Licensees are entitled to a refund of those fees that are not barred by K.S.A. 60-512, together with prejudgment interest on that amount. The district court entered judgment for each Licensee for the excess

fees charged and collected by the City between July 1, 1988, and November 28, 1995, with prejudgment interest of 10% per annum. On remand, the district court is directed to apply K.S.A. 60-512 to determine the excess fees paid by each Licensee and enter judgment and postjudgment interest accordingly. The trial court's basis for its award of attorney fees is affirmed.

The judgment of the district court is affirmed in part, reversed in part, and remanded with directions.